[No. D022423. Fourth Dist., Div. One. Nov. 21, 1995.]

Conservatorship of the Person and Estate of ALBERTA V. IRVINE.
CLAIRE M. FLETCHER, Petitioner and Respondent, v.
CHILDREN'S HOSPITAL MEDICAL CENTER FOUNDATION,
Objector and Appellant.

## COUNSEL

Bell, Rosenberg & Hughes, Robert Rosenberg and James C. Nelson for Objector and Appellant.

Seltzer, Caplan, Wilkins & McMahon, Julie P. Dubick and Michael R. Seyle for Petitioner and Respondent.

## OPINION

**McDONALD, J.**—Children's Hospital Medical Center Foundation (Children's) appeals an order invalidating an amendment to a trust of Alberta V. Irvine (Irvine) pursuant to a petition filed by the trustee, Claire M. Fletcher (Fletcher), for instructions regarding the purported amendment. On appeal, Children's contends the probate court erred in finding that: (1) it had jurisdiction under Probate Code[1] section 17200; (2) the trust amendment was invalid because it was not properly served; and (3) Irvine lacked sufficient mental capacity to execute the trust amendment. For the reasons discussed below, we affirm.

### I

### FACTUAL AND PROCEDURAL BACKGROUND

Irvine's husband died in 1985 when Irvine, then a resident of Alameda County, was 76 years old, leaving her sister, Fletcher, a resident of San Diego County, as her closest living relative. Pursuant to a 1986 will prepared and witnessed by Attorney Robert Stefan, Irvine left specific bequests to

---

[1] All statutory references are to the Probate Code.

various relatives and charities (including $100,000 to Children's) and left the residue of her estate to Fletcher. Irvine revoked these specific bequests in a subsequent 1986 codicil, thereby effectively leaving her entire estate to Fletcher.

On September 28, 1990, Irvine executed a will apparently prepared and witnessed by an attorney in Stefan's law firm, George Rogers. This 1990 will left Irvine's tangible personal property to Fletcher and the residue of her estate in trust for Fletcher's maintenance during her lifetime and then, upon Fletcher's death, gave $400,000 to Fletcher's issue and the residue to various charities (including a 20 percent share to Children's).

On January 15, 1991, Irvine executed a trust and will prepared by Rogers. Those documents maintained the dispository provisions of the 1990 will, except for changing the division of the residue among the charities, and they also named Fletcher as, respectively, trustee and executor. With a cover letter dated January 15, 1991, Rogers mailed Fletcher originally executed copies of the trust and will.

In circumstances which are not entirely clear, Fletcher requested her attorney, Thomas Mitchell (now a San Diego County superior court judge), to call Irvine to discuss Irvine's estate plan. Irvine apparently indicated to Mitchell that the January 15, 1991, trust and will prepared by Rogers did not properly reflect her wishes and she requested that Mitchell prepare a new living trust and will in accordance with the wishes she described to Mitchell. Mitchell prepared a revocable living trust and a pour-over will in accordance with his understanding of Irvine's wishes.

On February 1, 1991, Mitchell met with Irvine to confirm her testamentary wishes and discuss the estate plan documents he had prepared for her. Irvine then executed the trust agreement (Trust) and will which Mitchell had prepared. Mitchell, and Irvine's housekeeper, Sylvia Villamil, witnessed Irvine's execution of the will. In general, the Trust provided that upon Irvine's death specific distributions be made to various charities (including $100,000 to Children's), and the balance of the Trust estate be held in trust during Fletcher's life with the net income paid to Fletcher and her four sons. Upon Fletcher's death, the balance of the Trust estate would be distributed equally among her four sons or their issue. The Trust expressly provided Irvine could amend its provisions during her lifetime by a written instrument delivered by certified mail to the trustee; "provided, however, no such amendment shall be effective until thirty (30) days after written notice of such amendment is personally served upon and accepted by the Trustees, [Fletcher] and HOMEFED BANK."

On July 23, 1991, Irvine executed an amendment to the Trust (Amendment No. 1) which changed the successor trustee(s) from HomeFed Bank to Fletcher's four sons (in succession).

On November 7, 1991, Irvine executed an amendment to the Trust (Amendment No. 2) which changed the specific bequests upon her death, deleting the bequest to Children's and adding $25,000 bequests to each of Fletcher's four sons.

In May 1992, Irvine's condition apparently had deteriorated, as she worried she did not have sufficient funds with which to live. She actually had over $100,000 per year of spendable income after her normal living expenses were paid. She was confused as to whether Rogers or Mitchell was her attorney. Mitchell met with Irvine and confirmed she wanted him to be her attorney and that the estate plan he had prepared for her was satisfactory.

In June 1992, Fletcher began having problems reaching Irvine by telephone, because Villamil would tell her Irvine was unavailable or sleeping and Fletcher's calls were rarely returned. When Fletcher did speak with her, Irvine's communications were short or rambling.

In July 1992, Fletcher could not reach Irvine or anyone at her house for two weeks. After another week, Fletcher filed a missing persons report. Eventually Fletcher learned from Irvine's bookkeeper that Irvine was on a trip with Villamil.

Apparently during this June and July period in 1992, Irvine called the lawyers referral service of the local bar in Alameda County, obtained the name of an estate planning attorney, William Pedder, and met with Pedder regarding her estate plan. According to Pedder's declaration, Irvine was unhappy with Fletcher's handling of her financial affairs and wanted to leave her estate to charity because Fletcher had "plenty." Pedder said Irvine wanted Fletcher removed as trustee of the Trust before the Trust was amended.

On or about August 7, 1992, Irvine executed a "Notice of Intention to Remove Trustees" (Removal Notice) prepared by Pedder. The Removal Notice purported to remove Fletcher and her four sons as trustees of the Trust, effective when personal service of the Removal Notice is made on all the removed trustees. Although the Removal Notice did not name the successor trustees, Irvine executed on the same date an instrument titled "Intention to Remove Current Trustees and to Nominate Replacement Trustees upon Effective Date of Removal" (Replacement Nomination). The

Replacement Nomination stated that upon the removal of the trustees, Stefan and Mechanics Bank of Richmond (Bank) would be the successor cotrustees. Fletcher received a copy of the Removal Notice (but apparently not the Replacement Nomination) during the period she was unable to contact Irvine.

Fletcher then filed a petition with the Alameda County Superior Court seeking the appointment of Fletcher as the conservator of the person and estate of Irvine. On October 1, 1992, pursuant to Fletcher's conservatorship petition, the Alameda County Superior Court appointed Fletcher as temporary conservator of Irvine's person and estate. The court found that a temporary conservator was necessary to provide for the temporary care, maintenance and support of Irvine and to protect her property from loss or injury. Also about this time, Fletcher filed a petition with the Alameda County Superior Court requesting instructions regarding the Removal Notice.

On October 20, 1992, Irvine executed an amendment to the Trust (Amendment No. 3) which purportedly amended the Trust by expressly disinheriting Fletcher and her family and leaving the entire balance of the Trust estate upon Irvine's death to four charities, including a 35 percent share to Children's. Amendment No. 3 stated it would be effective "thirty (30) days after the personal service of this amendment upon the then acting trustees of this trust." On October 20, 1992, Irvine also executed a will containing the same dispositive provisions as Amendment No. 3 and naming Stefan as executor. Pedder prepared and witnessed both documents.

On October 22, 1992, Irvine was deposed in connection with Fletcher's petition for conservatorship, and a videotape and written transcript were made of her deposition.

On March 9 and 24, 1993, Bank and Stefan, respectively, acknowledged receipt by personal delivery of Amendment No. 3. However, their respective receipts did not indicate whether they accepted the duties of successor trustees of the Trust.

On September 28, 1993, in the course of Fletcher's petition for instructions regarding the Removal Notice, the probate division of the San Diego County Superior Court (which received transfer of the case from the Alameda County Superior Court on June 4, 1993, because of Irvine's change of residence to San Diego County) appointed Susan Wilson as guardian ad litem (Guardian) for Irvine. In her report to the court dated December 14, 1993, the Guardian recommended that the court find Fletcher to be the trustee of the Trust and further find the Removal Notice was not the independent act of a competent trustor.

On December 15, 1993, the probate court, having reviewed the Guardian's report, held a hearing regarding Fletcher's petition for instructions concerning the Removal Notice. In its written order filed December 27, 1993, the probate court found Fletcher to be the acting trustee of the Trust, and found that the Removal Notice was not the independent act of a competent trustor and Irvine was not acting in her own best interest or capable of so acting at the time of the Removal Notice. Accordingly, the court ordered:

"1.   Claire M. Fletcher is the now acting trustee under the [Trust];

"2.   The [Removal Notice] was not the independent act of a competent trustor[.]" No appeal was filed regarding this order.

In January 1994, Fletcher apparently first learned of the existence of Amendment No. 3 from the Guardian, never having received service of it. On January 18, 1994, Fletcher was appointed permanent conservator of Irvine's estate, having previously been appointed permanent conservator of Irvine's person on September 15, 1993.

On April 13, 1994, the Guardian filed a petition (case No. P-160415) for substituted judgment to revoke estate planning documents (i.e., Amendment No. 3 and the accompanying will).

On May 4, 1994, the probate court continued the hearing on the Guardian's petition until June 29.

On May 27, 1994, Fletcher filed a sister petition (case No. P-162545) for instructions regarding Amendment No. 3, seeking an order invalidating it.

On June 29, 1994, the probate court continued the hearing on both petitions until August 3 in order to allow time for further research and discovery. In particular, the court stated the matter "can be set for a live hearing, testimony hearing *if necessary*, at that point." (Italics added.)

On August 3, 1994, the probate court conducted a hearing regarding the petitions and indicated it would rule on the three legal issues discussed in the parties' memoranda and at the hearing.

On September 16, 1994, the probate court entered its order, finding in part:

"(2)   The Court finds that Probate Code Section 17200(b)(13) specifically authorizes the use of Petitions for Instructions regarding the validity of Trust Amendments. [18 Cal. L. Rev. Comm. Reports 1286-87 (1986)];

"(3)  The Court finds that Amendment #3 was not properly served upon the conservator/trustee as required by the terms of the 1991 Trust, thereby rendering the Amendment invalid;

". . . . . . . . . . . . . . . . . . . . . . . . .

"The totality of the evidence at bar shows that the conservatee/trustor lacked sufficient mental capacity to be able to understand the nature of the proposed Amendment; and,

"THEREFORE, it is ordered that:

"The Amendment Number 3 dated October 20, 1992, was not an independent act of a competent trustor pursuant to *Walton* v. *Bank of California* (1963) 218 CA2d 527 [32 Cal.Rptr. 856]."

On October 28, 1994, Irvine died.

On November 14, 1994, Children's filed its notice of appeal of the September 16 order.

II

JURISDICTION UNDER SECTION 17200

■  Children's first contends the probate court erred in finding it had jurisdiction to consider Fletcher's petition for instructions regarding Amendment No. 3. Specifically, Children's asserts the probate court had no authority under section 17200 to invalidate a trust agreement or amendment while the trustor is still alive. However, it cites no case law or other authority in support of its position.

The probate court found section 17200, subdivision (b)(13) "specifically authorizes" the use of petitions for instructions regarding the validity of trust amendments. We need not determine whether this subdivision alone supports the probate court's jurisdiction, because it is clear from viewing section 17200 as a whole that a probate court has jurisdiction over both inter vivos and testamentary trusts to entertain petitions for instructions regarding the validity (and thus, invalidity) of trust agreements or amendments. Section 17200 reads in pertinent part:

"(a)  Except as provided in Section 15800, a trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust or to determine the existence of the trust.

"(b)   Proceedings concerning the internal affairs of a trust include, but are not limited to, proceedings for any of the following purposes:

"(1)   Determining questions of construction of a trust instrument.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(3)   Determining the validity of a trust provision.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(6)   Instructing the trustee.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(13)   Approving or directing the modification or termination of the trust. . . ."[2] Section 17200 makes no distinction between inter vivos trusts (i.e., living trusts) and testamentary trusts (i.e., trusts created by a will). Further, case law supports a probate court's jurisdiction under section 17200 to consider petitions regarding inter vivos trusts (see, e.g., *Stewart* v. *Towse* (1988) 203 Cal.App.3d 425, 428-429 [249 Cal.Rptr. 622]), and nothing in the statutory scheme indicates any legislative intent to restrict the jurisdiction of the probate court to only those matters arising after the death of a trustor.

Section 17200 expressly provides that the probate court's jurisdiction "include[s], but [is] not limited to," the proceedings described in subdivision (b). The clear legislative intent was to authorize the probate court to hear and decide any petition for instructions filed by a trustee regarding the internal affairs of a trust. In this case, Fletcher, as trustee of the Trust, sought instructions from the probate court regarding whether Amendment No. 3 was valid. This petition falls within at least three specific jurisdictional provisions under section 17200, namely (1) determining the validity of a trust provision (i.e., Amend. No. 3), (2) instructing the trustee, and (3) approving (or disapproving) a modification of a trust. (§ 17200, subd. (b)(3), (6) & (13).) Even if the petition did not fall within the literal provisions of section 17200, subdivision (b), it nevertheless would fall within the general jurisdiction of probate courts under sections 17000 and 17200 for proceedings

---

[2]Section 17000 reinforces the jurisdiction of the probate court, stating:

"(a)   The superior court having jurisdiction over the trust pursuant to this part has exclusive jurisdiction of proceedings concerning the internal affairs of trusts.

"(b)   The superior court having jurisdiction over the trust pursuant to this part has concurrent jurisdiction of the following:

"(1)   Actions and proceedings to determine the existence of trusts. . . ."

concerning the internal affairs of a trust or to determine the existence of a trust (and presumably, the existence of an amendment to that trust). Thus, Children's fails to show that the probate court had no jurisdiction to consider the petition.

## III

### AMENDMENT NO. 3 IS INVALID BECAUSE IT WAS NOT SERVED IN ACCORDANCE WITH THE PROVISIONS OF THE TRUST

■ Children's also contends the probate court erred in concluding Amendment No. 3 was invalid because it was not properly served upon the trustee as required by the Trust.

Paragraph 4(b) of the Trust provides: "The Settlor [i.e., Irvine] may at any time during her lifetime amend any of the terms of this instrument by an instrument in writing signed by Settlor and delivered by certified mail to the Trustee; provided, however, no such amendment shall be effective until thirty (30) days after written notice of such amendment is personally served upon and accepted by the Trustees, CLAIRE M. FLETCHER and HOMEFED BANK." Provisions like paragraph 4(b) which require a trustor (i.e., settlor) to notify the trustee regarding an amendment and delay its effectiveness for a specific time period are enforceable, and trustors are bound to follow these provisions in order to make effective amendments to trusts. ■ As one authority notes:

"Any method of modification [or amendment] provided in the trust instrument will . . . be effective. If the instrument makes the stated method [for modification or amendment of the trust] the exclusive method, it *must* be followed; if it does not, the trust may be modified [or amended] by a writing, other than a will, signed by the settlor and delivered to the trustee during the settlor's lifetime. Instruments may require . . . consent of a third party or a specific waiting period before the modification is effective. Provisions like these are designed to protect settlors from possible undue influence of people who would like to benefit from the trust assets. . . .

*"If a settlor modifies the trust but fails to inform the trustee, the modification [or amendment] will not be effective if the trust instrument requires delivery of the modification [or amendment] to the trustee or the trustee's consent, because the modification [or amendment] will not have been made according to the terms of the governing instrument."* (Cal. Trust Administration (Cont.Ed.Bar 1985) § 12.3, p. 458, italics added.) ■ Statutory law confirms the binding effect of express procedures for amendment of a trust.

Section 15402 provides: "*Unless the trust instrument provides otherwise*, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation."[3] (Italics added.) Thus, section 15402 recognizes a trustor may bind himself or herself to a specific method of modification or amendment of a trust by including that specific method in the trust agreement.

Section 15402 is consistent with the Restatement Second of Trusts, section 331, which provides:

"(1)  The settlor has power to modify the trust if and to the extent that by the terms of the trust he reserved such a power.

"(2)  Except as stated in §§ 332 and 333, the settlor cannot modify the trust if by the terms of the trust he did not reserve a power of modification." Comment (d) to that section states: "If the settlor reserves a power to modify the trust only in a particular manner or under particular circumstances, he can modify the trust only in that manner or under those circumstances." (Rest.2d Trusts, § 331, com. (d), p. 144.)

---

[3]Section 15401 provides the methods of *revocation* of a trust as follows:
"(a)  A trust that is revocable by the settlor may be revoked in whole or in part by any of the following methods:
"(1)  By compliance with any method of revocation provided in the trust instrument.
"(2)  By a writing (other than a will) signed by the settlor and delivered to the trustee during the lifetime of the settlor. *If the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation, the trust may not be revoked pursuant to this paragraph.*" (Italics added.)
The italicized portion of section 15401 makes it clear a trustor may provide express provisions in the trust agreement for revocation of the trust, and that method then will be the exclusive method for revocation of the trust. In this respect, section 15401 (enacted in 1986) incorporated existing case law to this effect. In *Hibernia Bk.* v. *Wells Fargo Bank* (1977) 66 Cal.App.3d 399, 404 [136 Cal.Rptr. 60], the court stated: "While the law might favor the free revocability of a trust in the interests of the alienability of property generally, there is no basis to conclude that such policy would be furthered by denying to a trustor the power to specify the manner of revocation. . . . [To conclude otherwise] would not allow him to protect himself from the consequences of his whim, caprice, momentary indecision, or of undue influence by other persons." That court then held the trustor had failed to comply with the trust's express provisions for revocation of the trust, and affirmed the summary judgment denying revocation of the trust. (*Id.* at pp. 404-405.)
"[I]f the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation, then the trust cannot be revoked by the delivery of a writing by the settlor to the trustee [as generally authorized by section 15401]." (60 Cal.Jur.3d (rev.) Trusts, § 292, p. 419, fn. omitted.)
California law is consistent with the Restatement Second of Trusts, section 330, comment (j), which states in pertinent part: "If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances."

Another authority observes: "If the method of exercising the power of modification is described in the trust instrument, such a provision will control, but otherwise the power can be exercised in any reasonable manner. Notice of amendment to the trustee should be a requirement, since the modification will surely affect his duties." (10A Bogert, The Law of Trusts & Trustees (2d ed. rev. 1983) ch. 47, § 993, p. 239, fns. omitted; see also *In re Trust of Kaufmann* (1975) 460 Pa. 24 [331 A.2d 209, 211]; *Northwestern University* v. *McLoraine* (1982) 108 Ill.App.3d 310 [64 Ill.Dec. 50, 438 N.E.2d 1369, 1373]; *Phelps* v. *State Street Trust Co.* (1953) 330 Mass. 511 [115 N.E.2d 382, 383].)

By including paragraph 4(b) in the Trust, Irvine provided for the exclusive means by which she could amend the Trust. To make an effective amendment of the Trust, she had to sign a writing amending the Trust and deliver this writing by certified mail to the trustee of the Trust, and then this amendment would not become effective until 30 days after the amendment was personally served upon and accepted by the trustee.

The record indicates Irvine signed Amendment No. 3. However, compliance with the second requirement for effectiveness of an amendment *is* disputed by the parties. Specifically, they disagree whether the actual trustee of the Trust received Amendment No. 3 by certified mail as required by paragraph 4(b) of the Trust. Fletcher declares she never received a copy of Amendment No. 3 from Irvine, and Children's does not dispute this. However, Children's contends the purported successor trustees (namely, Stefan and Bank) received copies of Amendment No. 3 on, respectively, March 9, 1993, and March 24, 1993, thereby complying with the requirements of paragraph 4(b). It asserts Stefan and Bank (and not Fletcher) were the proper trustees to receive service at that time.

Thus, the ultimate question is who was the trustee of the Trust at the time of Amendment No. 3. However, we need not debate or resolve this issue, because it has already been conclusively determined by the probate court in its order dated December 27, 1993. In connection with Fletcher's petition for instructions regarding the Removal Notice, the probate court stated in its December 27, 1993 order:

"1. [Fletcher] is the now acting trustee under the [Trust] . . . ;

"2. The [Removal Notice] was not the independent act of a competent trustor."

In so ruling, the court effectively held the Removal Notice was invalid and of no effect, because it was either the act of an incompetent person or the

result of undue influence or some other factor depriving Irvine of her independence. The result of this finding was that Fletcher continued to be the trustee of the Trust despite her purported removal by the Removal Notice, and the probate court confirmed this by expressly ruling Fletcher was "now" the trustee of the Trust. The probate court's order of December 27, 1993, was not appealed and became a final determination of this issue. Thus, we cannot revisit the questions whether the Removal Notice was invalid and whether Fletcher was the trustee of the Trust.

Further, acts of incompetent persons are generally either void or voidable. In *O'Brien* v. *Dudenhoeffer* (1993) 16 Cal.App.4th 327, 335-336 [19 Cal.Rptr.2d 826], the Court of Appeal directed that judgment be entered voiding a gift transfer of real property by a person who was under a temporary conservatorship at the time, concluding the temporary conservatorship deprived the conservatee of the legal capacity to make the transfer. Our situation is analogous. Irvine was found by the probate court to be incompetent (or unduly influenced) in executing the Removal Notice, thereby voiding the Removal Notice.

Once it is determined the Removal Notice is void and of no effect, it is clear who the trustee of the Trust was at the time of Amendment No. 3. Because Fletcher was never effectively removed as trustee of the Trust by the Removal Notice or any other action by Irvine, Fletcher was the trustee of the Trust at the time of Amendment No. 3. Because Irvine never served Fletcher with a copy of Amendment No. 3, the requirements of paragraph 4(b) of the Trust were not met. Accordingly, Amendment No. 3 never became effective.

Children's rhetorically asks what Irvine was to do at the time of Amendment No. 3, because she presumably believed that Fletcher had been removed as trustee and that Stefan and Bank had replaced her as trustees. It emphasizes the Removal Notice was not invalidated until over one year after Amendment No. 3, so Irvine could not be expected to serve Fletcher rather than Stefan and Bank. It further argues Stefan and Bank were, in fact, the proper trustees of the Trust at the time of Amendment No. 3. However, this argument is clearly refuted by the probate court's order of December 27, 1993. As discussed above, that order had the effect of voiding the Removal Notice, thereby retroactively confirming that Fletcher was the trustee of the Trust at the time of Amendment No. 3. Any supposed inequities or unfairness in retroactive invalidation of an action purportedly replacing a trustee do not compel a contrary conclusion. If the Removal Notice was void or invalid because of incompetence or undue influence, it should not have even a temporary effect in replacing Fletcher until she could obtain a court order

to the contrary. The Removal Notice was void *ab initio*, and it never took effect. Thus, Children's fails to show Stefan and Bank were the proper trustees at the time of Amendment No. 3.

Because Amendment No. 3 was never properly served on Fletcher as a matter of law, Amendment No. 3 was invalid and we affirm the court's order.

Because of our disposition on this ground, we need not address the remaining contention by Children's that the probate court could not conclude, as a matter of law, that Irvine did not have sufficient capacity to execute Amendment No. 3. This contention involves the very difficult issue of whether a temporary conservatee lacks legal capacity to amend a trust when it is clear a conservatee cannot create a trust, *or* whether a temporary conservatee may, as a matter of law, possess testamentary capacity to make an amendment to a trust which affects only disposition of trust corpus upon her death. Even if the latter case were found true, a probate court presumably would still need to conduct an evidentiary hearing to determine whether, as a matter of fact, the conservatee possessed sufficient capacity to execute such an amendment. Because we need not address this issue, we make no comment regarding the merits of this contention.

Further, we need not address Fletcher's contention that Children's has no standing to bring this appeal because it has joined a petition contesting probate of Irvine's 1991 will and requesting probate of her will dated October 20, 1992, thereby arguably violating the Trust's "no-contest" provision.

### Disposition

The order is affirmed.

Kremer, P. J., and Huffman, J., concurred.