[No. B168103. Second Dist., Div. Eight. Aug. 19, 2004.]

SCOTT A. HUSCHER, Appellant, v.
WELLS FARGO BANK, as Trustee, etc., Respondents.

**COUNSEL**

Law Offices of Adams & Rafferty, Barry L. Adams and Patrick K. Rafferty for Appellant.

Baker & Hostetler, Jack I. Samet and George T. Mooradian for Respondent Wells Fargo Bank.

D. Michael Trainotti for Respondent Memorial Medical Center Foundation.

Law Offices of John T. Anderson and John T. Anderson for Respondent Long Beach Rescue Mission.

Vandenberg, Newell, Curtis, Nelson and Schuur & Burnight, Pamela Bourette Schuur and Gregory J. Burnight for Respondent Long Beach Rotary Scholarship Foundation, Inc.

**OPINION**

**RUBIN, J.**—Scott A. Huscher appeals from the probate court order denying his petition to determine that he was a beneficiary of a family trust. We affirm that order.

## FACTS AND PROCEDURAL HISTORY

George B. Marx established a trust in his name on June 8, 1983 (the Marx Trust or the Trust). Among the named beneficiaries were his four step-grandchildren, including Scott A. Huscher. The trust proceeds were to be distributed among the step-grandchildren after both Marx and his wife died. The Trust provided that Marx, as trustor, "may at any time amend any of the terms of the trust by an instrument in writing signed by [Marx] and the Trustee (the Bank or the Trustee)."[1] Between November 1983 and November

---

[1] Bank of America was the original named Trustee. Wells Fargo Bank became Trustee after acquiring Bank of America's trust business.

1991 Marx made eight amendments to the Trust by way of handwritten instructions which were signed by him, but not by the Trustee. One of those amendments, in September 1990, removed Huscher as a trust beneficiary. Marx wrote that he did so because a separate fund he established for Huscher had grown so large that Huscher no longer needed money from the Marx Trust. Some of the other amendments added various charities as beneficiaries, including the Long Beach Rotary Scholarship Foundation (the Foundation).

Marx died in October 1992. His widow died in January 2002. In December 2002 Huscher petitioned the probate court to determine that he was still a beneficiary of the Marx Trust. According to Huscher, the Marx Trust required that any amendments be signed by both Marx and the Trustee. Because the Trustee had not signed any of the amendments, including the amendment removing him as a beneficiary, Huscher contended those amendments were invalid. The Bank opposed the petition on the ground that the amendment procedure set forth in the Marx Trust was not exclusive and that the method used by Marx complied with the applicable statutory requirements. The Foundation filed a demurrer to the petition on the grounds that it was barred by the statute of limitations, Huscher's lack of standing, and the doctrines of laches and res judicata.

On April 21, 2003, the court denied Huscher's petition, finding that the Marx Trust's provision for obtaining the Trustee's signature on any amendments was merely permissive, not mandatory. The court then took the Foundation's demurrer off calendar because it was moot. This appeal followed.

## OVERVIEW

Under current law, a trust may be revoked by complying with any method provided in the trust instrument. (Prob. Code, § 15401, subd. (a)(1).) If the trust explicitly makes that method exclusive, then it may be revoked only in that manner. If not, then the trust may also be revoked by a writing, other than a will, signed by the trustor and delivered to the trustee while the trustor is alive. (Prob. Code, § 15401, subd. (a)(2).) Unless the trust provides otherwise, the trust may be *modified* by the revocation procedures of Probate Code section 15401. (Prob. Code, § 15402.)[2]

---

[2] Probate Code sections 15401 and 15402 were enacted in 1986 and became operative in 1987. They were repealed, but reenacted as part of the new Probate Code in 1990. (See Law Rev. Com. com. and Background on Section 15401 of Repealed Code, 54 West's Ann. Prob. Code (1991 ed.) foll. § 15401, p. 571 and § 15402, p. 575.)

Because the Marx Trust was created before July 1, 1987, it is governed by prior law, however, not by Probate Code sections 15401 and 15402. (Prob. Code, § 15401, subd. (e).)[3] Relying on a passage from *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334 [47 Cal.Rptr.2d 587] (*Irvine*), the Bank contends that the prior and current laws are identical when it comes to the procedures for modifying a trust. According to the Bank, because the method provided by the Marx Trust—a writing signed by both Marx and the Trustee—was not explicitly made the exclusive modification method, delivery of the amendments by Marx to the Trustee was sufficient under the prior law. (Civil Code former section 2280 (section 2280).) Huscher has never directly addressed the applicability or interpretation of section 2280, but does cite to both *Irvine* and authority predating Probate Code section 15401 to support his contention that because Marx specified *a* method of modification, that method alone must be followed.

To resolve this dispute, we must examine section 2280 as it originally existed and as amended in 1931, along with decisions which applied both versions of that section. In particular, we focus on four decisions: *Fernald v. Lawsten* (1938) 26 Cal.App.2d 552 [79 P.2d 742] (*Fernald*); *Rosenauer v. Title Ins. & Trust Co.* (1973) 30 Cal.App.3d 300 [106 Cal.Rptr. 321] (*Rosenauer*); *Hibernia Bk. v. Wells Fargo Bank* (1977) 66 Cal.App.3d 399 [136 Cal.Rptr. 60] (*Hibernia*); and *Irvine, supra,* 40 Cal.App.4th 1334. As set forth below, these four decisions have obscured the true meaning of section 2280. After exploring those decisions, we conclude that under section 2280, a trust's modification procedures must be followed if they are explicitly exclusive or if the provisions are so specific and detailed that they implicitly preclude resort to any other method. If not, then a modification may also be accomplished under the statutory procedure of section 2280: by delivering a signed modification to the trustee even if the trustee does not sign the amendment. Because that was the case here, the Marx Trust amendments are valid.[4]

## STANDARD OF REVIEW

At issue here is the interpretation of section 2280. The fundamental rule of statutory construction is to ascertain the intent of the legislative body in order to effectuate the purpose of the law. In doing so, we first look to the

---

[3] The Trust does state in paragraph 10.19 that its validity and construction "shall be governed by the laws of the State of California *from time to time in force and effect.*" (Italics added.) The italicized language might be construed to mean that the Trust is governed by the law as it changes over time. Neither party raised the issue either below or on appeal, however, and therefore we will not reach it.

[4] Even though we address the prior law under a repealed code section, our holding may be important to any trusts created before July 1, 1987, that may still exist.

words of the enactment and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear. The statute must be given a reasonable and commonsense interpretation consistent with the legislative body's apparent purpose and intention. The interpretation should be practical, not technical, and should result in wise policy rather than mischief or absurdity. If the language of a statute is clear, we should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history. (*Kotler v. Alma Lodge* (1998) 63 Cal.App.4th 1381, 1390–1391 [74 Cal.Rptr.2d 721].) We also consider that legislative history. (*In re John S.* (2001) 88 Cal.App.4th 1140, 1142, fn. 2 [106 Cal.Rptr.2d 476].)

■ As part of our present task, we are also called upon to construe decisions from other courts of appeal interpreting section 2280. Those decisions are not binding on us. (*McCallum v. McCallum* (1987) 190 Cal.App.3d 308, 316, fn. 4 [235 Cal.Rptr. 396].) Further, the language of an opinion must be construed with reference to the facts of the case, and the positive authority of a decision goes no farther than those facts. A decision is not authority merely for what it says, but for the points actually involved and actually decided. (*Trope v. Katz* (1995) 11 Cal.4th 274, 284 [45 Cal.Rptr.2d 241, 902 P.2d 259].) Applying this rule, we are free to deconstruct the language of decisions from other courts of appeal and reassemble their true meaning and effect. (See *Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1121–1124 [66 Cal.Rptr.2d 337].)

## DISCUSSION[5]

### 1. *Original and Amended Versions of Section 2280*

As originally enacted in 1872, section 2280 provided that after a trust was created, it could not be revoked without the consent of the beneficiaries "unless the declaration of trust reserves a power of revocation to the trustor, and in that case the power must be strictly pursued." (See Historical Notes,

---

[5] In discussing both the pre- and post-1931 versions of section 2280, it is important to note that neither made provision for trust modifications and were, by their terms, limited to trust revocations. Not until Probate Code sections 15401 and 15402 were enacted did the Legislature provide a statutory procedure for modifying a trust. Even so, cases interpreting section 2280 recognized that the right to revoke included an implied right to modify. Accordingly, cases concerning trust revocation procedures apply with equal force in the trust modification context. (*Estate of Lindstrom* (1987) 191 Cal.App.3d 375, 385, fn. 11 [236 Cal.Rptr. 376].) When we discuss trust revocation, we therefore include trust modification as well.

10 West's Ann. Civ. Code (1954 ed.) foll. former § 2280, p. 608.)[6] In short, a trust could be revoked only if the trust instrument said so, and only then by following the method of revocation that was specified. (*Carpenter v. Cook* (1900) 6 Cal.Unrep. 410, 411 [60 P. 475] [trust said it could be revoked by a deed signed by the trustor and recorded with the county; attempted revocation failed because trustor tried to revoke through his will and therefore did not "strictly pursue" the specified procedure]; *Nichols v. Emery* (1895) 109 Cal. 323, 331 [41 P. 1089] [trustor properly reserved right to revoke and trust remained operative until the right was "exercised in the proper way"]; *Bowman v. Moore* (1890) 87 Cal. 306, 310–311 [25 P. 409] [trustor revoked trust by complying with provision that revocation be filed with the trustee].)

In 1931, the Legislature amended section 2280, which, until it was repealed in 1986, read, in relevant part: "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee." Where the original version of section 2280 made irrevocability the norm unless otherwise stated, the 1931 version opted to make revocability the norm unless the trust expressly declared itself irrevocable.

## 2. *Fernald v. Lawsten*

*Fernald, supra,* 26 Cal.App.2d 552, was the first published· decision to construe the amended version of section 2280 as it applied to the procedures for revoking a trust. The trustor in *Fernald* was described as an elderly spinster who transferred her house, business, money, and personal property in trust to one Lawson, a man she regarded as a friend whom she fully and completely trusted. The trust instrument provided that it was revocable when "agreed upon in writing by the parties thereto." About two years later, the trustor unilaterally revoked the trust by way of a writing filed with Lawson, who was the trustee. When Lawson refused to reconvey the trustor's property, she sued. The trial court ruled in her favor, finding that Lawson occupied a confidential relationship with the trustor and had committed constructive fraud.

On appeal, Lawson contended that the revocation was void because the trust could be revoked only by following the method provided in the trust instrument, not by compliance with section 2280. Noting that the provisions of the recently amended version of section 2280 applied, the *Fernald* court pointed out that even though the trust stated it was revocable when the parties agreed in writing to revoke it, "*[t]his does not affirmatively declare the trust*

---

[6] As pointed out in the text at page 960, *ante,* the rules governing revocation of trusts apply equally to modifications of those instruments, which is the subject of this appeal.

*may not be otherwise terminated.*" Because the document was not expressly made irrevocable, "*it may be revoked in the manner provided by section 2280 . . . .*" (*Fernald, supra,* 26 Cal.App.2d at p. 560, italics added.) The italicized language strongly implies that the section 2280 procedure would not have applied if the trust had expressly stated it could be revoked only by complying with the trust's specified method of revocation. It therefore also implies that absent an express declaration of exclusivity, the trust could be revoked pursuant to either the trust's specified method or the procedure established by section 2280. However, the *Fernald* court went on to make comments indicating that section 2280 provided more than an available alternative method of revocation and might in fact trump a revocation procedure that had been specified by a trust. The court rejected Lawson's reliance on cases decided under the pre-1931 version of section 2280, which held that "when the trust agreement declares the method by which it may be revoked it is exclusive in that regard and must be substantially followed . . . ." The new version of section 2280 now "authorize[d] the revocation of a voluntary trust in the manner therein provided, unless it is expressly made irrevocable. *Where the statute provides the specific procedure for revoking a voluntary trust, it will prevail over an agreement between the parties to the contrary,* provided the trust is not expressly made irrevocable." (*Fernald,* at p. 561, italics added.)

### 3. *Rosenauer v. Title Ins. & Trust Co.*

At issue in *Rosenauer, supra,* 30 Cal.App.3d 300, was a trust which stated that the trustor could amend or revoke the trust during her lifetime by way of an instrument in writing executed by the trustor and delivered to the trustee. After the trustor died, it was discovered that her will included a provision purporting to revoke the trust. Neither the will nor any other document purporting to revoke the trust had been delivered to the trustee while the trustor was alive, but the will was filed with the trustee after being admitted to probate. The administrator of the trustor's estate sued the trustee to enforce the purported revocation and compel the trustee to turn over the trust's assets to the estate. The trial court sustained without leave to amend the trustee's demurrer to the complaint. On appeal, the estate administrator contended that the revocation procedure contained in section 2280 overrode the trust's revocation procedure, including its requirement that the revocation occur while the trustor still lived. The trustee contended that the revocation was ineffective because neither procedure had been followed.

The appellate court affirmed, but, in the mistaken belief that it was the first California court to consider whether section 2280 might override an alternative revocation method spelled out in a trust instrument, did so without

discussing *Fernald. (Rosenauer, supra,* 30 Cal.App.3d at p. 303.) Instead of analyzing *Fernald,* the *Rosenauer* court turned to the Restatement Second of Trusts, which provided: "If the settlor [i.e., trustor] reserves the power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances. [¶] . . . [¶] If the settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will." (Rest., Trusts, § 330(1), com. j (the Restatement).) The *Rosenauer* court also pointed to numerous decisions from the courts of other states that held that a trust could not ordinarily be revoked by a will. (*Rosenauer, supra,* at pp. 303–304.) "While Civil Code section 2280 was undoubtedly intended to liberalize the power of revocation in California we do not believe it was intended to operate as a nullification of a trustor's plainly expressed preference for a mode of revocation. [¶] The thrust of the statute is to remove any doubt concerning the revocability of a voluntary trust which is silent on the subject and it cannot be construed as creating an exclusive method for the exercise of the power when as here the trust is not silent but instead quite specific." (*Id.* at p. 304.)

### 4. *Hibernia Bank*

The trust at issue in *Hibernia, supra,* 66 Cal.App.3d 399, specified that no revocation would be effective until 60 days after the trustor's signed and notarized revocation had been both approved by her lawyer and delivered to the trustee. Just three weeks after creating the trust, and while confined in a convalescent hospital, the trustor told three hospital employees she wanted to revoke the trust and, in their presence, signed a statement to that effect. Soon after, a conservator was appointed for the trustor. The conservator then delivered the purported revocation to the trustee. This procedure did not comply with the trust's requirements for revocation as the document was neither notarized nor reviewed by a lawyer. When the trustor died, the bank administering her estate sued the trustee in order to regain the trust assets, contending that the revocation had been effective pursuant to section 2280. Because the trust's specified procedure had not been followed, the trustee was granted summary judgment and the estate administrator appealed.

On appeal, the administrator relied on *Fernald, supra,* 26 Cal.App.2d 552, to contend that section 2280's revocation procedure prevailed over the method specified by the trust instrument. The *Hibernia* court affirmed, choosing to follow *Rosenauer* and the Restatement over *Fernald.* Focusing on *Fernald*'s statement that section 2280 will prevail over the terms of the

trust, the *Hibernia* court said: "While the law might favor the free revocability of a trust in the interests of the alienability of property generally, there is no basis to conclude that such policy would be furthered by denying to a trustor the power to specify the manner of revocation. *Fernald* would in effect require a trustor to create either an irrevocable trust or one freely revocable upon written notice. It would not allow him to protect himself from the consequences of his whim, caprice, momentary indecision, or of undue influence by other persons." (*Hibernia, supra,* 66 Cal.App.3d at p. 404.)[7]

## 5. *Conservatorship of Irvine*

The last word on section 2280 came in *Irvine,* where Probate Code section 15401 was applied to a trust which provided that any amendments had to be in writing and " 'shall [not] be effective until thirty (30) days after written notice of such amendment is personally served upon and accepted by the Trustees . . . .' " (*Irvine, supra,* 40 Cal.App.4th at p. 1343.) Because the disputed amendment was served on someone who had been mistakenly considered a trustee, the *Irvine* court held that the trust's amendment procedure had not been satisfied. It also held that the trust's modification procedure was explicitly exclusive under Probate Code section 15401, meaning that the statutory alternative of delivering a signed amendment to the trustee was not available. (*Irvine,* at pp. 1345–1346.)

The *Irvine* court's analysis, although ostensibly carried out under the terms of Probate Code section 15401, relied almost exclusively on authorities that had interpreted Civil Code former section 2280. These included a 1985 treatise on California trusts (Cal. Trust Administration (Cont.Ed.Bar 1985) § 12.3, p. 458 (CEB)), a treatise on trust law in general (10A Bogert, The Law of Trusts & Trustees (2d rev. ed. 1983) ch. 47, § 993, p. 239 (Bogert)), the Restatement, and *Hibernia.* (*Irvine, supra,* 40 Cal.App.4th at pp. 1343–1345.) *Irvine* cited these and other disparate authorities for a farrago of seemingly inconsistent propositions: (1) if a trust instrument makes a method of revocation the exclusive method, it must be followed (*id.* at p. 1343, citing CEB); (2) if a trust instrument provides a method of revocation or modification, that method thereby becomes exclusive (*id.* at p. 1344, fn. 3, and at p. 1345, citing Bogert); (3) a method of revocation or modification becomes exclusive if the trust explicitly makes it so (*id.* at p. 1344, fn. 3, citing 60 Cal.Jur.3d (1994) Trusts, § 292, p. 419 [analyzing Prob. Code, § 15401]); and (4) if a trust

---

[7] The *Hibernia* court also distinguished *Fernald* because *Fernald* was based on constructive fraud and involved a trust created solely for the benefit of the trustor. (*Hibernia, supra,* 66 Cal.App.3d at p. 404.)

states that it can be revoked only in a certain way or only under certain circumstances, then that procedure must be followed. (*Id.* at p. 1344, and fn. 3, citing the Restatement.)[8] Adding to the confusion, the *Irvine* court also said that section 15401, subdivision (a)(2) incorporated the existing case law, citing *Hibernia* as an example. (*Irvine,* at p. 1344, fn. 3.)

Because *Irvine* asserts that the earlier case law interpreting section 2280 was incorporated into Probate Code section 15401, but offers inconsistent interpretations of the law, it has become a Rorschach test for the parties. By hand-selecting the interpretation of *Irvine* that best suits their respective needs, they offer up, Rashomon-like, their competing perspectives. According to the Trustee, *Irvine* effectively held that section 2280 and the current law are the same, with both requiring an explicit statement of exclusivity from the Marx Trust's amendment procedure in order to preclude resort to the statutory method. Because the method specified in the Marx Trust did not contain the limiting language which the *Irvine* court held was explicitly exclusive—that no amendment shall be effective until the trust's modification procedure was followed—the Trustee contends the Marx Trust's specified method was merely discretionary. Huscher points to *Irvine*'s statements that if a trust instrument supplies a method of revocation or modification, that is enough to make it exclusive. (*Irvine, supra,* 40 Cal.App.4th at p. 1344, fn. 3 [if a trustor "provide[s] express provisions in the trust agreement for revocation of the trust, . . . that method then will be the exclusive method for revocation of the trust"]; *id.* at p. 1345 [citing Bogert for the proposition that if the method of modification is specified, it will control].) According to Huscher, therefore, the mere fact that Marx took the trouble to specify a modification method automatically means that method is exclusive and must be followed.

### 6. A Trust Can Be Modified Pursuant to Section 2280 Unless the Trust Implicitly or Explicitly Specifies an Exclusive Modification Procedure

Under the current law, the statutory procedure for modifying a trust can be used unless the trust provides a modification procedure and explicitly makes that method exclusive (explicit exclusivity). (Prob. Code, §§ 15401, subd. (a)(2), 15402.) Critical to our analysis of Civil Code former section 2280 is the situation where a trust instrument's modification procedure is not explicitly exclusive, but is so specific that it would effectively preclude any other method, thereby

---

[8] The first point does not state whether the exclusivity of the provision must be explicit and therefore leaves open the possibility that the trust might implicitly "make" a method the exclusive one. The second indicates that a method becomes exclusive simply because it has been set forth in the trust. The third, based on a treatise analyzing Probate Code section 15401, requires an explicit statement of exclusivity. The fourth, based on the Restatement, is also ambiguous as to whether the exclusivity of a revocation method may be implicit.

implying its exclusivity (implicit exclusivity). As promised earlier, in our Overview, having reviewed the four key decisions applying section 2280, we now analyze those rulings and their unstated reliance on these two forms of exclusivity. Our review leads us to conclude that a trust may be modified in the manner provided by section 2280 unless the trust instructions either implicitly or explicitly specify an exclusive method of modification.

 Our courts and others have turned to the dictionary to define the term "explicit." It is equated with the term "express," and means directly and distinctly stated in plain language that is unequivocal and unambiguous. (*Jones v. Regan* (1959) 169 Cal.App.2d 635, 640 [337 P.2d 889].) Webster's defines "explicit" as "fully revealed or expressed without vagueness, implication, or ambiguity: leaving no question as to meaning or intent." Webster's also states that "explicit" is synonymous with "express" and "definite." According to Webster's, explicit "implies such verbal plainness and distinctness that there is no need for inference and no room for difficulty in understanding." The word "definite" "stresses precise, clear statement or arrangement that leaves no doubt or indecision," while "express" "implies both explicitness and direct and positive utterance." (Webster's 9th New Collegiate Dict. (1988) p. 438.) The most obvious way to do something expressly is to precisely state that you are doing so. (*Johnson v. Ashcroft* (3d Cir. 2002) 286 F.3d 696, 702.) In other words, a modification method is explicitly exclusive when the trust instrument directly and unambiguously states that the procedure is the exclusive one.[9] "Explicit" is usually contrasted with "implicit." (*Ganyo v. Municipal Court* (1978) 80 Cal.App.3d 522, 529 [145 Cal.Rptr. 636].) When something is implied or implicit, it is "capable of being understood from something else though unexpressed." (Webster's 9th New Collegiate Dict. (1988) p. 605.)

In *Fernald, supra,* 26 Cal.App.2d 552, the court interpreted the newly amended version of section 2280, which stated that unless a trust was expressly made irrevocable, every trust "shall be revocable by the trustor by writing filed with the trustee." (*Fernald*, at p. 560.) Even though the trust at issue there said it became revocable when the parties agreed in writing to do so, that provision did "not affirmatively declare the trust may not be otherwise terminated." (*Ibid.*) That language sounds very much like our formulation of explicit exclusivity. The court then indicated that absent such a revocation method, the trust could be revoked pursuant to section 2280. (*Fernald*, at p. 560 [accordingly, the trust "*may* be revoked in the manner provided by section 2280 . . . ." (italics added)].) Although the court later said section 2280's

---

[9] For example, the trust could state that the modification method is exclusive or that the trust can be modified only by following the prescribed procedure.

procedure would "prevail" over a contrary trust provision, in light of the court's earlier endorsement of explicitly exclusive procedures, we believe the court was referring to revocation methods which were implicitly exclusive. If the trust contained an explicitly exclusive revocation procedure, it had to be followed. If the procedure were not explicitly exclusive, then the statutory method "prevailed."[10]

This holding went unexplored and unchallenged until *Rosenauer, supra,* 30 Cal.App.3d 300. As in *Fernald,* the disputed trust provision in *Rosenauer* was not explicitly exclusive. It simply stated that the trustee could "at any time during her lifetime" amend or revoke the trust. Implicit in this language, we believe, is the notion that the trust could not be revoked after the trustor died. We also believe that this implied meaning formed the true basis of the holding in *Rosenauer.*

Nowhere in *Rosenauer* does the court even hint at the concept of an explicitly exclusive revocation provision. Nor does it discuss *Fernald,* which, as we have seen, is premised on the notion that an explicitly exclusive revocation provision will prevail over section 2280. Given its factual setting, we do not believe that *Rosenauer* stands for the proposition that only an explicitly exclusive revocation method will trump section 2280. Instead, *Rosenauer* refused to make section 2280 the exclusive method of revocation when the trust is not silent and provides a procedure that is "quite specific." (*Rosenauer, supra,* 30 Cal.App.3d at p. 304.) In short, if the trust were silent on a method of revocation, then section 2280 would apply. If the trust contains a highly specific method of revocation, however, that method will control. That sounds to us a lot like implicit exclusivity, a concept that we believe was expanded in *Hibernia, supra,* 66 Cal.App.3d 399.

The trust in *Hibernia* said that no revocation shall be effective until and unless it was signed by the trustor and notarized, approved in writing by the trustor's lawyer, delivered to the trustee, and 60 days had elapsed since that delivery. Although this procedure is highly specific, it is not explicitly exclusive. Instead, its exclusivity is implicit in its many constraints and its high degree of specificity. Rather than affirming on that basis, the *Hibernia* court misconstrued *Fernald* as holding that section 2280 nullified any revocation method set forth in a trust instrument. (*Hibernia, supra,* 66 Cal.App.3d at p. 404.) *Hibernia* did not, however, analyze the degrees of specificity present and at issue there or in *Fernald* and *Rosenauer.* Nor did it discuss the degree

---

[10] As discussed *post,* however, we ultimately conclude that the procedure contained in section 2280 serves only as a viable alternative to a trust's specified modification or revocation procedure that is not implicitly or explicitly exclusive. In such a case, the trustor may amend or revoke according to either the terms of the trust or the section 2280 procedure.

of specificity required of a trustor in order to preclude the use of section 2280. Given the nature of the trust provision at issue in *Hibernia,* combined with that court's failure to discuss the issues of specificity and exclusivity raised by *Fernald* and *Rosenauer,* we believe *Hibernia*'s holding is limited to its facts: where a trust revocation provision is so specific that it becomes implicitly exclusive, the trust may be revoked only pursuant to the terms of that provision, not by the procedure of section 2280.

■ When distilled, *Fernald, Rosenauer,* and *Hibernia* stand for the following: if a trust contains a revocation or modification procedure that is either explicitly or implicitly exclusive, that procedure must be followed and section 2280 will not apply. We believe the reasons for this rule can be found in both *Rosenauer* and *Hibernia.* As *Rosenauer* said, the purpose behind section 2280 was to protect the revocability of trusts that were silent on the subject and was not intended to create an exclusive method of revocation where the trust contains one that is "quite specific." (*Rosenauer, supra,* 30 Cal.App.3d at p. 304.) In rejecting *Fernald,* the *Hibernia* court said that mandatory application of section 2280 to all trusts regardless of their revocation procedures *"would not allow [a trustor] to protect himself from the consequences of his whim, caprice, momentary indecision, or of undue influence by other persons."* (*Hibernia, supra,* 66 Cal.App.3d at p. 404, italics added.) Stated differently, if the trustor has gone to the trouble to spell out a revocation method in some detail, the procedure must have some importance to the trustor, especially where the procedure is geared toward protecting the trustor from his own incompetence or the undue influence of others. If the trustor has done so, then that procedure must be followed and section 2280 is not available.

Left unanswered by this formulation is what happens when a trust's revocation or amendment procedure is not explicitly exclusive and is not sufficiently detailed or specific to be considered implicitly exclusive.[11] We see two possible interpretations: (1) that section 2280 preempts the nonexclusive procedure; or (2) either method may be used. As discussed below, we endorse the latter.

---

[11] *Fernald*'s statement that section 2280 will prevail over the trust terms seems to suggest that the statutory procedure must be followed unless an explicitly exclusive method is provided. Even if *Fernald* meant to say so, because the issue was not before the court, that pronouncement would be dicta. In fact, the defendant in *Fernald* challenged the purported trust revocation precisely because the trust's specified, nonexclusive procedures had *not* been followed. Because both *Rosenauer* and *Hibernia* involved the necessity for compliance with implicitly exclusive revocation procedures, those courts did not address the issue either.

■ We do not believe that section 2280 was intended to preempt a trustor's designated method of revocation simply because it is not implicitly or explicitly the exclusive means of doing so. As amended in 1931, section 2280 said that unless a trust were expressly made irrevocable in writing, "every voluntary trust shall be revocable by the trustor by writing filed with the trustee." Because the amendment was designed to reverse the presumption of irrevocability that existed under the previous version of section 2280, we believe that the term "shall" in the amended version of section 2280 was intended to highlight that change in the law. In short, "shall" was used to make clear that trusts shall be revocable unless otherwise stated, but was not designed to make mandatory the method of revocation which followed. Our conclusion is bolstered by Civil Code former section 2282, which governed the means for discharging a trustee. In that section, the Legislature stated that a trustee could be discharged "only as follows," then set forth six specific methods. (See 10 West's Ann. Civ. Code (1954 ed.) former § 2282, p. 616.) As that section makes clear, when the Legislature wanted to make trust-related procedures exclusive, it knew how to say so. We also believe that where a trust's modification method does not suggest exclusivity, the section 2280 procedure should remain available to the trustor as an alternative.[12] To hold otherwise would render that portion of section 2280 meaningless. More important, it could well frustrate the intentions of a competent trustor who did not intend to create an exclusive modification procedure and who sought to modify his trust pursuant to section 2280.[13]

---

[12] Both Huscher and the Trustee seem to agree that Marx's amendments would have been valid had the Trustee signed them in compliance with the Trust's modification procedure.

[13] The current law and our interpretation of Civil Code former section 2280 are in accord where the revocation method is explicitly exclusive. (Prob. Code, § 15401, subd. (a)(1), (2).) Because Probate Code section 15401, subdivision (a)(2) represents a change in the prior case law rule (see Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15401, p. 571, citing *Rosenauer, supra,* 30 Cal.App.3d at p. 304), we presume the change made was to require a statement of explicit exclusivity and thereby avoid the problems of interpretation inherent in determining issues of implicit exclusivity.

To the extent *Irvine, supra,* 40 Cal.App.4th at page 1344, footnote 3, suggests some other interpretation of section 2280, we decline to follow that decision. First, its comments were dicta, unaccompanied by any detailed analysis of the earlier law. Second, as detailed in Discussion part 5, *ante, Irvine* exhibits no small degree of confusion over the proper interpretation of both section 2280 and Probate Code section 15401. This is perhaps best illustrated by *Irvine*'s holding that the trust amendment procedure at issue there qualified as explicitly exclusive under Probate Code section 15401, subdivision (a)(2). Pursuant to the trust provision, the trust could be amended by an instrument in writing signed by the trustor and delivered by certified mail to the trustee, "provided however, no such amendment shall be effective until thirty (30) days after written notice of such amendment is personally served upon and accepted by the Trustees . . . ." Under our holding, that provision is *not* explicitly exclusive. Instead, it is implicitly exclusive based on the degree of specificity required by the trust instrument.

### 7. *Because the Marx Trust's Modification Procedure Was Not Exclusive, It Could Be Modified Pursuant to Section 2280*

The modification provision of the Marx Trust states that the trustor "may at any time amend any of the terms of this trust by an instrument in writing signed by the Trustor and the Trustee." We exercise our independent judgment in construing the terms of the Trust. (*Estate of Guidotti* (2001) 90 Cal.App.4th 1403, 1406 [109 Cal.Rptr.2d 674].) Our primary duty in construing the Trust is to give effect to Marx's intent. We do this by looking at the language used, interpreting words in their ordinary and grammatical sense, unless a different interpretation can be clearly ascertained. (*Wells Fargo Bank v. Huse* (1976) 57 Cal.App.3d 927, 932 [129 Cal.Rptr. 522].)

■ Under the test we have fashioned, this provision is not explicitly exclusive. Nor does it meet the criterion for implicit exclusivity. The language of the trusts at issue in *Rosenauer, Hibernia,* and *Irvine* contained clear and specific language detailing either restrictions on or the methods by which an amendment or revocation could be effected. In *Irvine* and *Hibernia,* the trusts stated that no revocation or modification would be effective until those procedures had been followed. (*Irvine, supra,* 40 Cal.App.4th at p. 1343 [trust said no modification "shall be effective" until 30 days after it was served upon and accepted by the trustee]; *Hibernia, supra,* 66 Cal.App.3d at p. 401 [revocation "shall not be effective until and unless" several specified events took place].)

The Marx Trust's amendment provision contains no similarly detailed language. It simply states that the trustor "may at any time amend . . . by an instrument in writing signed by the Trustor and the Trustee." The absence of such language tips the scale away from an interpretation of implicit exclusivity. Furthermore, the disputed procedural requirement—obtaining the Trustee's signature—does nothing to protect the trustor. The Trustee does not have to agree to, accept, or approve the amendment: it simply must sign it. Huscher has never claimed that Marx was incompetent or subject to undue influence when he amended the Trust, or that the amendments did not reflect Marx's true intentions. As part of the section dealing with revocation and modification, the Marx Trust also provides that the powers to revoke and modify are personal to Marx. Invalidating the amendments because the Trustee failed to sign them would violate that provision by effectively granting the Trustee a form of veto power over Marx's otherwise valid modifications, thereby frustrating the intentions of an apparently competent trustor. When viewed in this light, the Trustee's signature is little more than a ministerial act which Marx ultimately must have viewed as unnecessary in order to modify his trust. (*In re Estate of Mueller* (Mo.Ct.App. 1996) 933 S.W.2d 903, 907.)

## DISPOSITION

For the reasons set forth above, the order denying Huscher's petition to determine that he was beneficiary of the Marx Trust is affirmed. Respondents to recover their costs on appeal.

Cooper, P. J., and Flier, J., concurred.