[No. F062232. Fifth Dist. Apr. 10, 2012.]

JUDITH E. KING et al., Plaintiffs and Respondents, v.
DAVID ERIC LYNCH, Individually and as Trustee, etc., Defendant and
Appellant.

**COUNSEL**

Law Office of William A. Romaine and William A. Romaine for Defendant and Appellant.

Barry W. Pruett for Plaintiffs and Respondents.

**OPINION**

**LEVY, Acting P. J.**—This is an appeal from an order granting a petition to determine the construction of a trust and the validity of certain trust amendments. We conclude that the trial court correctly construed the trust and found that the amendments to the trust were invalid. Accordingly, the order will be affirmed.

## BACKGROUND

In July 2004, Zoel Night Lynch and Edna Mae Lynch, a married couple, created a revocable trust.[1] The trust designated the settlors, Zoel and Edna, as initial trustees of the trust. The trust provided that during the lifetime of the settlors, the income and principal of the trust would be used for the support of the settlors.

Article "FOURTH" of the trust concerned modification and revocation. That article provided, with omissions not pertinent to this appeal, the following:

"During the joint lifetimes of the Settlors, this Trust may be amended, in whole or in part, with respect to jointly owned property by an instrument in writing signed by both Settlors and delivered to the Trustee, and with respect to separately owned property by an instrument in writing signed by the Settlor who contributed that property to the Trust, delivered to the Trustee.

---

[1] This case involves a number of members of the Lynch family. For convenience and clarity we will refer to individuals by their first names after the initial use of their full names.

"During the joint lifetimes of the Settlors, this Trust may be revoked, in whole or in part, with respect to jointly owned property by an instrument in writing signed by either Settlor and delivered to the Trustee and the other Settlor, and with respect to separately owned property by an instrument in writing signed by the Settlor who contributed that property to the Trust, delivered to the Trustee..

"The first Settlor to die shall be called the 'Deceased Spouse' and the living Settlor shall be called the 'Surviving Spouse.' The Surviving Spouse shall have the powers to amend or revoke this Trust in whole or in part. . . . [¶] . . . [¶]

"The powers of the Settlors to revoke or amend this instrument are personal to Settlors and shall not be exercisable in Settlors' behalf by any conservator, guardian or other fiduciary, except that revocation or amendment may be authorized, after notice to the Trustee, by the court that appointed the conservator, guardian or other fiduciary."

Zoel and Edna had five children, David Eric Lynch, Nancy Street, Mary Jo Tirman, Judith E. King, and Thomas Francis Lynch. Thomas predeceased his parents leaving two daughters surviving, Sandra Lynch and Susan Lynch.

The original trust provided that after the death of Zoel and Edna, Nancy, Mary, Judith, and David were each to receive a distribution of $100,000 from the trust, and Sandra and Susan were each to receive $50,000. The remainder of the trust was to be given to David. The trust established David as successor trustee upon the death of the last settlor.

In 2005 and 2006, Zoel and Edna executed three amendments to the trust. The net result of these amendments was to bequeath four parcels of real estate to David. Both of the settlors signed these amendments and their validity is not questioned in the present proceeding.

Later in 2006, Edna suffered a severe brain injury that left her incompetent to handle her own affairs, although it does not appear that she was adjudicated incompetent.

After Edna's injury, Zoel executed three further amendments to the trust, which are designated the fourth, fifth, and sixth amendments. The fourth amendment modified the trustee designation, noting that Edna was no longer able to serve and appointed Zoel as sole trustee. The fifth amendment reduced all monetary bequests by half, so that the four children were allocated $50,000 each and Sandra and Susan were allocated $25,000 each. The sixth amendment further reduced the monetary bequests, allocating $10,000 each

for the children and $5,000 each for Sandra and Susan. Each of the amendments left intact the bequest of real estate to David and the designation of David as the remainder beneficiary.

Zoel died on January 18, 2010, and Edna died on August 10, 2010. By letter from David's attorney dated October 27, 2010, the trustee gave notice concerning the administration of the trust, pursuant to Probate Code section 16061.7.[2] On February 15, 2011, Nancy, Mary, Judith, Sandra, and Susan filed the present proceeding, causing it to be served upon David. David responded to the petition as trustee of the trust "in accordance with the authority granted to him" under the trust.

Following a hearing, the trial court granted the petition and entered an order finding that the fourth, fifth, and sixth amendments to the trust were invalid and without effect on the ground that these amendments were signed by only one of the settlors in contravention of the express terms of the trust. The court confirmed that under the operative terms of the trust, real estate was to be distributed to David, $100,000 each was to be distributed to David, Nancy, Mary, and Judith, and $50,000 each was to be distributed to Sandra and Susan, with David receiving any remainder. David appealed. The remaining beneficiaries have appeared jointly as respondents. In the discussion that follows, we will refer to David as appellant and Nancy, Mary, Judith, Sandra, and Susan, collectively, as respondents.

## DISCUSSION

█ In general, a revocable trust can be revoked, in whole or in part, in any manner provided in the trust instrument. (§ 15401, subd. (a)(1).) In addition, the trust may be revoked by a writing, other than a will, signed by the trustor and delivered to the trustee, unless the method of revocation provided in the trust instrument is explicitly exclusive. (§ 15401, subd. (a)(2).)

█ Under section 15402, unless the trust instrument provides otherwise, a revocable trust may be modified by the procedure for revocation. This appeal involves the construction of this section.

The trust provides that, during the joint lifetimes of the settlors, the trust may be amended by a writing signed by both settlors and delivered to the trustee. Appellant contends that this provision is not expressly or impliedly exclusive and therefore Zoel alone could amend the trust by the revocation procedures set forth in section 15401. This analysis requires concluding that,

---

[2] All further section references are to the Probate Code unless otherwise noted.

under sections 15401 and 15402, no distinction exists between trust amendment provisions and trust revocation provisions. However, the genesis and language of section 15402 belie this result.

Sections 15401 and 15402 were enacted in 1986 and became operative in 1987. (*Huscher v. Wells Fargo Bank* (2004) 121 Cal.App.4th 956, 960, fn. 2 [18 Cal.Rptr.3d 27] (*Huscher*).) Before that date, trust revocation was governed by Civil Code former section 2280. (*Huscher, supra*, 121 Cal.App.4th at p. 961.) However, no statute specifically addressed trust modifications. Rather, courts held that, in general, a power of revocation implied the power of modification. (*Heifetz v. Bank of America* (1957) 147 Cal.App.2d 776, 781–782 [305 P.2d 979].)

Civil Code former section 2280, as amended in 1931, provided, in part: " 'Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee.' " (*Huscher, supra*, 121 Cal.App.4th at p. 963.) Thus, revocability was the norm unless the trust declared itself to be irrevocable. (*Ibid.*) In contrast, before 1931, a trust could be revoked only if the trust instrument said so and only then by following the revocation method that was specified in the trust. (*Huscher, supra*, 121 Cal.App.4th at pp. 962–963.)

Over the years, the courts analyzed Civil Code former section 2280 in various contexts. The court in *Huscher* reviewed this history and noted that some courts had appeared to find that the statutory revocation method prevailed (*Fernald v. Lawsten* (1938) 26 Cal.App.2d 552 [79 P.2d 742]), while others had appeared to hold that the revocation method set forth in the trust prevailed (*Rosenauer v. Title Ins. & Trust Co.* (1973) 30 Cal.App.3d 300 [106 Cal.Rptr. 321] (*Rosenauer*); *Hibernia Bk. v. Wells Fargo Bank* (1977) 66 Cal.App.3d 399 [136 Cal.Rptr. 60] (*Hibernia*)). The *Huscher* court was presented with a trust that was created before 1987 and thus the case was governed by the repealed Civil Code section 2280, not Probate Code sections 15401 and 15402. (*Huscher, supra*, 121 Cal.App.4th at p. 961.) Based on its review, the *Huscher* court determined that the true meaning of Civil Code former section 2280 had been obscured. The court then proceeded to distill these cases and concluded that if the trust contained a revocation procedure that was either explicitly exclusive or implicitly exclusive, i.e., sufficiently detailed or specific to be considered exclusive, then the trustor was required to use that method to revoke the trust. However, if the trust's revocation procedure was not explicitly or implicitly exclusive, then the trustor could use either that method or the Civil Code former section 2280 method to revoke the trust. (*Huscher, supra*, 121 Cal.App.4th at p. 970.) Since trust modifications were not governed by a separate statute, *Huscher* applied the rules governing trust revocation to trust modifications.

Before the Legislature enacted section 15401, the proposed legislation was analyzed by the California Law Revision Commission. Based on the *Rosenauer* and *Hibernia* courts' apparent findings that a trust's revocation method must prevail, the Law Revision Commission characterized section 15401 as a compromise position. According to the Law Revision Commission, section 15401 would make available the statutory method of revoking the trust except where the trust instrument explicitly made exclusive the method of revocation specified in the trust. (Selected 1986 Trust and Probate Legislation (Sept. 1986) 18 Cal. Law Revision Com. Rep. (1986) pp. 1270–1271.) Thus, with respect to revocation, the Legislature adopted the essence of the *Huscher* court's analysis.

The language of section 15401, subdivision (a), confirms this conclusion. That section provides:

"(a) A trust that is revocable by the settlor may be revoked in whole or in part by any of the following methods:

"(1) By compliance with any method of revocation provided in the trust instrument.

"(2) By a writing (other than a will) signed by the settlor and delivered to the trustee during the lifetime of the settlor. *If the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation, the trust may not be revoked pursuant to this paragraph.*" (Italics added.)

Relying on *Huscher*, appellant argues that, because the trust did not explicitly make the method of modification exclusive, Zoel had the power to modify the trust by the procedure for revocation, i.e., one signature was sufficient to amend the trust. However, *Huscher* was applying the pre-1986 law. At that time, there was no statute addressing modification. Rather, the rules on revocation were applied to modification by implication. Under current law, trust modification is governed by section 15402. Accordingly, *Huscher* does not provide authority for appellant's position.

Section 15402 states: "Unless the trust instrument provides otherwise, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation." Thus, if the trust instrument is silent on modification, the trust may be modified in the same manner in which it could be revoked, either statutorily or as provided in the trust instrument. In that case, the trust instrument does not *provide otherwise*. Here, however, the trust instrument specifies how the trust is to be modified. Therefore, we must interpret the phrase "[u]nless the trust instrument provides otherwise" in this context.

■ In construing section 15402, we begin with its plain language, affording the words their ordinary and usual meaning. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251 [85 Cal.Rptr.3d 466, 195 P.3d 1049].) The words the Legislature chose to enact are the most reliable indicator of its intent. (*Ibid.*) At the same time, we do not interpret the statute in a manner that renders any language mere surplusage. The words must be construed in context and in light of the nature and purpose of the statute. (*Kotler v. Alma Lodge* (1998) 63 Cal.App.4th 1381, 1390–1391 [74 Cal.Rptr.2d 721].) Further, we will apply common sense to the language at issue and interpret the statute to make it workable and reasonable. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1122 [29 Cal.Rptr.3d 262, 112 P.3d 647].)

■ The qualification "[u]nless the trust instrument provides otherwise" indicates that if any modification method is specified in the trust, that method must be used to amend the trust. As noted by the court in *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334, 1344 [47 Cal.Rptr.2d 587] "section 15402 recognizes a trustor may bind himself or herself to a specific method of modification or amendment of a trust by including that specific method in the trust agreement."

Before 1986, courts applied the rules governing trust revocations to trust modifications. However, when the Legislature enacted sections 15401 and 15402, it differentiated between trust revocations and modifications. This indicates that the Legislature no longer intended the same rules to apply to both revocation and modification.

If we were to adopt appellant's position and hold that a trust may be modified by the revocation procedures set forth in section 15401 unless the trust explicitly provides that the stated modification method is exclusive, section 15402 would become surplusage. Rather than enacting section 15402, the Legislature could have combined revocation and modification into one statute. Moreover, as is evident from section 15401, the Legislature knew how to limit the exclusivity of a revocation method provided in a trust and chose not to impose such a limitation on modifications in section 15402.[3]

---

[3] The dissent relies on the California Law Revision Commission comments regarding trust *revocation* under section 15401. The dissent then assumes that the Legislature intended the same rules to apply to trust modification under section 15402, despite the Legislature's use of different statutory language. The dissent further relies on the *Huscher* court's observation that "Under the current law, the statutory procedure for modifying a trust can be used unless the trust provides a modification procedure and explicitly makes that method exclusive . . . ." (*Huscher, supra,* 121 Cal.App.4th at p. 967.) However, this conclusion is dicta and is not supported by an analysis of section 15402. Accordingly, it is not persuasive. In fact, the *Huscher* court acknowledges that its holding is only important to trusts created before July 1, 1987. (*Huscher, supra,* 121 Cal.App.4th at p. 961, fn. 4.)

■ Therefore, in this case, to be effective, the amendments needed to be signed by both Zoel and Edna.[4] The trust specified a modification method and thus, under section 15402 the trust could only be amended in that manner. The settlors bound themselves to a specific method of modification. If we were to hold otherwise, especially where, as here, the amendment provision is more restrictive than the revocation provision, we would cause the amendment provision to become superfluous and would thereby thwart the settlors' intent.[5]

## DISPOSITION

The motion to dismiss the appeal is denied. The order is affirmed. Costs on appeal are awarded to respondents.

Dawson, J., concurred.

**DETJEN, J., Dissenting.**—I respectfully dissent.

The majority holds that under Probate Code section 15402, if a trust instrument states any method for modification of a trust, that method is the exclusive method by which the trust may be amended.[1] Because I conclude that section 15402 permits modification by the method established in section 15401, subdivision (a)(2), unless that method is explicitly excluded by the terms of the trust, I respectfully disagree with the majority.

If there had been a statute governing modification of trusts in existence prior to the 1987 revision of the Probate Code, an interpretation such as the majority's interpretation of section 15402 would have some support in case law. (See *Rosenauer v. Title Ins. & Trust Co.* (1973) 30 Cal.App.3d 300, 301, 304 [106 Cal.Rptr. 321]; see also *Hibernia Bk. v. Wells Fargo Bank* (1977) 66

---

[4] We recognize that, due to Edna's incompetence, Edna could not execute a trust amendment. However, as recited above, the trust instrument provided a remedy for this situation. If a conservator or guardian had been appointed for Edna, the court that appointed the guardian or conservator could have authorized a trust amendment.

[5] Respondents have filed a motion to dismiss this appeal, based on arguments concerning the limited authority of appellant as trustee under the trust instrument. By previous order, this court deferred that motion pending consideration of the appeal on its merits. As respondents acknowledge in their brief, the Court of Appeal has discretion to treat the appeal as having been taken in the appellant's individual capacity, where the trustee also has a beneficial interest in the trust. (See *Graham v. Lenzi* (1995) 37 Cal.App.4th 248, 254 [43 Cal.Rptr.2d 407].) That is the case here. Accordingly, we deny the motion to dismiss the appeal and deem appellant to be proceeding in his individual capacity as a beneficiary of the trust.

[1] All further statutory references are to the Probate Code unless otherwise noted.

Cal.App.3d 399, 404 [136 Cal.Rptr. 60].)[2] Sections 15401 and 15402 were not enacted, however, to reflect that case law. They were enacted in response to a perceived need to move away from such a restrictive interpretation.

In 1985, the California Law Revision Commission (Commission) looked toward submitting a number of recommendations to the Legislature regarding the law of probate. (See Ann. Rep. (Mar. 1985) 18 Cal. Law Revision Com. Rep. (1986) p. 3.) During 1986, the Commission devoted its further attention to the preparation of a new Probate Code for introduction at the 1987 legislative session. (See Ann. Rep. (Dec. 1985) 18 Cal. Law Revision Com. Rep., *supra*, at p. 203.) In the area of modification and revocation of trusts, the proposed law (enacted in § 15401) retained the rule that "a trust [was] revocable unless it [was] made irrevocable by the trust instrument," and made "clear that a revocable trust may be revoked in the manner provided by statute . . . , unless a manner specified in the trust [was] made exclusive." (Selected 1986 Trust and Probate Legislation (Sept. 1986) 18 Cal. Law Revision Com. Rep., *supra*, at p. 1213.) The Commission wanted the trust to be a "flexible mechanism." (*Id.* at p. 1268.) "Even the [trust] drafter's best efforts may not provide the appropriate degree of flexibility, and some persons who draft trust instruments do not have the expertise needed to fashion an instrument that responds to the changing needs, values, and circumstances of the settlor and the beneficiaries. . . . Restrictive features of a trust may come to be viewed as too restraining in the face of the interest in free alienability of property." (*Ibid.*, fn. omitted.)

The Commission recognized the prior case law that "where the trust instrument prescribes a method of revocation, the prescribed procedure must be followed rather than the statutory method." (Selected 1986 Trust and Probate Legislation (Sept. 1986) 18 Cal. Law Revision Com. Rep., *supra*, at p. 1270.) The Commission balanced two competing interests: "This rule has been defended on the grounds that the settlor may wish to establish a more complicated manner of revocation than that provided by statute where there is a concern about 'future senility or future undue influence while in a weakened condition.' [Fn. omitted.] On the other hand, the case-law rule may be criticized as defeating the clear intention of the settlor who attempts to revoke a revocable trust by the statutory method, in circumstances that do not involve undue influence or a lack of capacity. In fact, the settlor may have forgotten about the method provided in the trust, or may not be aware of the case-law rule." (*Id.* at pp. 1270–1271.)

---

[2] "Not until Probate Code sections 15401 and 15402 were enacted did the Legislature provide a statutory procedure for modifying a trust. Even so, cases interpreting [Civil Code former] section 2280 recognized that the right to revoke included an implied right to modify. Accordingly, cases concerning trust revocation procedures apply with equal force in the trust modification context. [Citation.]" (*Huscher v. Wells Fargo Bank* (2004) 121 Cal.App.4th 956, 962, fn. 5 [18 Cal.Rptr.3d 27] (*Huscher*).)

To allow a settlor the power to "establish a more protective revocation scheme, but also honor[] the settlor's intention where the intent to make the scheme exclusive is not expressed in the trust instrument," the Commission adopted "a compromise position . . . [making] available the statutory method of revoking by delivery of a written instrument to the trustee during the settlor's lifetime except where the trust instrument explicitly makes exclusive the method of revocation specified in the trust." (Selected 1986 Trust and Probate Legislation (Sept. 1986) 18 Cal. Law Revision Com. Rep., *supra*, at p. 1271.) Thus, the 1987 adoption of section 15401 in the terms proposed by the Commission reflected a clear legislative choice to change the existing law in favor of permitting greater flexibility for the settlor, and rejecting the rule that the majority here asserts, which would designate a method of modification as exclusive simply because it has been set forth in the trust instrument.

As previously noted, prior to 1987, modification of a trust was viewed as merely one aspect of the more inclusive power to revoke a trust. (See *Huscher, supra*, 121 Cal.App.4th at p. 962, fn. 5.) In recommending the 1987 revisions to the law of trusts, however, the Commission set forth explicitly the nature of the implied power of modification: "Under general principles the settlor, or other person holding the power to revoke, may modify as well as terminate a revocable trust. [Fn. omitted.] The proposed law codifies this rule and also makes clear that the method of modification is the same as the method of termination, barring a contrary provision in the trust." (Selected 1986 Trust and Probate Legislation (Sept. 1986) 18 Cal. Law Revision Com. Rep., *supra*, at p. 1271.)

In summary, section 15401 was written specifically to change the restrictive rule adopted in *Rosenauer v. Title Ins. & Trust Co., supra*, 30 Cal.App.3d at page 304. (Cal. Law. Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15401, p. 571.) And section 15402 was added, not to establish a different rule from section 15401, as the majority asserts (maj. opn., *ante*, at pp. 1192–1193), but in order to adopt the same flexible rule for modifications as for revocations unless "bar[red]" by "a contrary provision in the trust" (Selected 1986 Trust and Probate Legislation (Sept. 1986) 18 Cal. Law Revision Com. Rep., *supra*, at p. 1271) or, in the language of statute, "[u]nless the trust instrument provides otherwise" (§ 15402). Section 15401 replaced Civil Code former section 2280. Section 15402 did not replace another statute, since the power to modify was only an implied power not found in a separate statute prior to the 1987 revisions. Nothing in the Commission's comments on sections 15401 and 15402 supports the position that, even though *Rosenauer v. Title Ins. & Trust Co., supra*, 30 Cal.App.3d at page 304, should not apply to revocations (§ 15401), it should, as the majority asserts, apply to modifications under section 15402.

The *Huscher* court reached this same conclusion and rejected the conclusion reached by the majority in the present case. (See *Huscher, supra,* 121 Cal.App.4th at p. 967.) As the majority notes, the *Huscher* court was examining a trust instrument that was signed in 1983, when Civil Code former section 2280 was in effect. (*Huscher, supra,* 121 Cal.App.4th at p. 959.) In its analysis on the issue of the law of trust modifications, however, *Huscher* examined both Civil Code former section 2280 and the current law, Probate Code, section 15402. (See *Huscher, supra,* 121 Cal.App.4th at pp. 960–963.) *Huscher* reviewed the decision in *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334, 1344–1345 [47 Cal.Rptr.2d 587] (*Irvine*), a case that did apply section 15402. The position taken by the majority in the present case was one of the propositions offered by *Irvine*.[3] *Huscher* did not, however, conclude that such a proposition was consistent with the language of section 15402. Instead, *Huscher* specifically stated, in reference to section 15402, "Under the current law, the statutory procedure for modifying a trust can be used unless the trust provides a modification procedure and explicitly makes that method exclusive . . . ." (*Huscher, supra,* 121 Cal.App.4th at p. 967.)

The trust instrument in *Huscher* provided that the trustor " 'may at any time amend any of the terms of [the] trust by an instrument in writing signed by the Trustor and the Trustee.' " (*Huscher, supra,* 121 Cal.App.4th at p. 972.) The *Huscher* court found that this provision did not provide explicit exclusivity, that is, the language did not expressly preclude the settlor from using alternate statutory methods to modify the trust instrument. (*Ibid.*)[4] The modification provision in the present case is similarly nonexclusive.[5]

In *Masry v. Masry* (2008) 166 Cal.App.4th 738 [82 Cal.Rptr.3d 915] (*Masry*), the court addressed a trust revocation that was executed in compliance with section 15401, subdivision (a)(2), but not in compliance with the method provided in the trust instrument. The *Masry* court cited to the point made in *Huscher* that " 'a modification method is explicitly exclusive when the trust instrument directly and unambiguously states that the procedure is the exclusive one' " and concluded that such reasoning applied to revocation.

---

[3] "*Irvine* . . . [offered] a farrago of seemingly inconsistent propositions: . . . (2) if a trust instrument provides a method of revocation or modification, that method thereby becomes exclusive . . . ." (*Huscher, supra,* 121 Cal.App.4th at pp. 966–967.)

[4] It similarly found the language was not implicitly exclusive, an issue that existed under Civil Code former section 2280 but that does not exist under the *Huscher* court's interpretation of section 15402. (See *Huscher, supra,* 121 Cal.App.4th at pp. 968, 972.)

[5] The language in this trust is: "[T]his Trust may be amended, in whole or in part, with respect to jointly owned property by an instrument in writing signed by both Settlors and delivered to the Trustee, and with respect to separately owned property by an instrument in writing signed by the Settlor who contributed that property to the Trust, delivered to the Trustee."

(*Masry, supra*, 166 Cal.App.4th at p. 742.) The *Masry* court found no explicit exclusivity in the following trust provision: " 'Each of the Trustors hereby reserves the right and power to revoke this Trust, in whole or in part, from time to time during their joint lifetimes, by written direction delivered to the other Trustor and to the Trustee.' " (*Id.* at p. 740.)

Just as in *Huscher* and *Masry*, the amendment language used here in article "FOURTH" of the trust instrument did not explicitly exclude use of the alternative statutory method for modification or revision. I am, therefore, of the opinion that Zoel Night Lynch was permitted to "modify the trust by the procedure for revocation" (§ 15402) in accordance with section 15401, subdivision (a)(2) and that the fourth, fifth, and sixth amendments to the trust instrument were validly executed and effective in modifying the trust instrument in accordance with the terms of the amendments.

Appellant's petition for rehearing by the Supreme Court was denied June 27, 2012, S202671.