Filed 9/16/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BRIANNA McKEE HAGGERTY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NANCY F. THORNTON et al.,<br><br>    Defendants and Respondents. | D078049<br><br><br><br>(Super. Ct. No. 37-2019-<br>00028694-PR-TR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Julia C. Kelety, Judge. Affirmed.

Blut Law Group and Elliot S. Blut for Plaintiff and Appellant.

Artiano Shinoff, Howard A. Kipnis and Steven J. Barnes for Defendant and Respondent Patricia Galligan.

Cross Law and Oleg Cross for Defendant and Respondent Racquel Kolsrud.

Higgs Fletcher & Mack, Roland H. Achtel and Scott J. Ingold for Defendant and Respondent Union of Concerned Scientists.

No appearance for Defendants and Respondents San Diego Humane Society, Nancy F. Thornton, Jill Bousman, George Bousman, Jack Hebert, Larry Guentherman, Gail Spielman and Dean Spielman.

Brianna McKee Haggerty appeals an order of the probate court finding that a trust agreement was validly amended, thereby excluding her from distribution.  Haggerty's aunt, Jeane M. Bertsch, created the trust in 2015.  The trust agreement included the following reservation of rights:  "The right by an acknowledged instrument in writing to revoke or amend this Agreement or any trust hereunder."  Bertsch drafted the disputed amendment in 2018.  She signed the amendment and sent it to her former attorney, but she did not have it notarized.

After Bertsch's death, Haggerty argued that the 2018 amendment was invalid because it was not "acknowledged" as described in the trust agreement.  The beneficiaries under the 2018 amendment responded that the amendment was "acknowledged" within the meaning of the trust agreement and, in any event, the method for amendment described in the trust agreement was not exclusive.  The probate court found that the amendment was valid.  We agree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

As noted, Bertsch created the trust at issue in 2015.  The trust agreement provided that Bertsch "reserves the following rights, each of which may be exercised whenever and as often as [she] may wish:  [¶]  A.  Amend or Revoke.  The right by an acknowledged instrument in writing to revoke or amend this Agreement or any trust hereunder."  (Boldface omitted.)  The agreement nominated Nancy Thornton as trustee in the event of Bertsch's death, resignation, or incapacity.

The next year, Bertsch drafted a first amendment to the trust agreement.  This 2016 amendment provided that Haggerty would become trustee in the event of Bertsch's death.  The amendment also made changes to the beneficiaries of the trust, including a residual distribution to Haggerty.

2

Bertsch signed the amendment, and it was apparently witnessed by a notary public in Illinois. Above the notary's signature, the document stated, "This instrument was acknowledged before me on 10-25-16, by JEANE M. BERTSCH." (Boldface omitted.) The document did not include a notarial seal or stamp.

Bertsch subsequently drafted two handwritten documents, a 2017 beneficiary list and the disputed 2018 amendment. The 2017 beneficiary list did not include Haggerty, and it provided that any residual assets would be distributed to the Union of Concerned Scientists (UCS). It was not signed. The 2018 amendment revised the beneficiary instructions again. It provided that UCS would receive "one half (Two Million Dollars)" and several individuals would receive "equal portions from the remainder half (Two Million Dollars)[.]" Haggerty was not included. Above her signature, Bertsch wrote, "I herewith instruct Patricia Galligan to place this document with her copy of the Trust. She can verify my handwriting." Galligan is Bertsch's former estate attorney.

Bertsch died in late 2018. Thornton filed a petition in the probate court to confirm her appointment as successor trustee. She contended the 2016 amendment, which named Haggerty as trustee in the event of Bertsch's death, had been revoked. But she believed the 2017 beneficiary list and 2018 amendments were valid.

Haggerty filed a competing petition to determine the validity of the 2016 amendment, the 2017 beneficiary list, and the 2018 amendment. She argued the trust agreement required that any amendment be acknowledged by a notary public or other specified person under the Civil Code. She maintained that the 2016 amendment had been validly acknowledged, but the 2017 beneficiary list and 2018 amendment had not. Haggerty requested

3

a declaration to that effect, as well as an order recognizing that she was the successor trustee, not Thornton.

Haggerty also filed objections to Thornton's petition to confirm her appointment. Several beneficiaries filed their own objections to Haggerty's petition. At a hearing, the court requested supplemental briefing on the issue of whether the trust agreement allowed amendment in the manner attempted by the 2017 beneficiary list and 2018 amendment.

In her brief, Haggerty continued to argue that the trust agreement required acknowledgment under the Civil Code. Relying primarily on *King v. Lynch* (2012) 204 Cal.App.4th 1186 (*King*), Haggerty reasoned that the trust agreement provided for a method of amendment, so that method must be followed in order to validly amend the agreement. Haggerty contended the 2016 amendment was valid, because it was acknowledged, but the 2017 beneficiary list and 2018 amendment were not.

Galligan responded that the trust agreement's use of the phrase " 'acknowledged instrument in writing' " was ambiguous. It could mean "expressly advis[ing] someone that the instrument amending the Trust was genuine or authentic," rather than imposing the Civil Code requirements for acknowledgment. Galligan argued that the court was required to consider extrinsic evidence of Bertsch's intent in using the phrase " 'acknowledged instrument' " to determine its meaning. Alternatively, Galligan contended the court could conclude the 2018 amendment was valid as a matter of law because the method of amendment specified in the trust agreement was not exclusive. Galligan distinguished *King* and suggested it was wrongly

4

decided. UCS and Racquel Kolsrud filed briefs advancing similar arguments.[1]

After a further hearing, which was not reported, the probate court denied Haggerty's petition. In a minute order, the court made the express finding that the 2018 amendment was a valid amendment to the trust agreement. Haggerty appeals.

DISCUSSION

The Probate Code governs the revocation and modification of trusts, and subsequent statutory references are to that code. The parties dispute the meaning of its provisions. We consider the issue de novo. "The meaning and construction of a statute is a question of law, which we decide independently." (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 189.) "The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of legislative intent. [Citation.] When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.] ' "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." ' " (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152.)

---

[1]   Galligan's brief also asserted that the 2016 amendment had been expressly revoked. It stated that Bertsch told Galligan she had a dispute with Haggerty in late 2017 and Bertsch had "destroyed the [2016 a]mendment with the intent to revoke it. Neither the original nor any copy of the [2016 a]mendment was found among [Bertsch's] estate planning documents in her possession following her death and the original has never been found."

5

Section 15401, subdivision (a) provides that a revocable trust may be revoked either (1) "[b]y compliance with any method of revocation provided in the trust instrument" or (2) "[b]y a writing, other than a will, signed by the settlor or any other person holding the power of revocation and delivered to the trustee during the lifetime of the settlor or the person holding the power of revocation." However, if the trust instrument "*explicitly* makes the method of revocation provided in the trust instrument the exclusive method of revocation," the method in the trust instrument must be used. (*Id.*, subd. (a)(2), italics added.)

Section 15401 changed the prior rule, which required that a trust instrument's method of revocation must be used if it was either explicitly or implicitly exclusive. (Cal. Law Revision Com. com., West's Ann. Prob. Code (2021 ed.) foll. § 15401; *Huscher v. Wells Fargo Bank* (2004) 121 Cal.App.4th 956, 970 (*Huscher*).) "[W]e presume the change made was to require a statement of explicit exclusivity and thereby avoid the problems of interpretation inherent in determining issues of implicit exclusivity." (*Huscher*, at p. 971, fn. 13.)

Section 15402 governs modification. It states, "Unless the trust instrument provides otherwise, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation." (§ 15402.) "This section codifies the general rule that a power of revocation implies the power of modification." (Cal. Law Revision Com. com., West's Ann. Prob. Code (2021 ed.) foll. § 15402.)

In this appeal, as in the probate court, the parties focus heavily on *King, supra,* 204 Cal.App.4th 1186. In *King,* a married couple created a revocable trust. (*Id.* at p. 1188.) For jointly owned property, the trust instrument described separate procedures for modification and revocation.

6

The trust could be modified "by an instrument in writing signed by both Settlors and delivered to the Trustee[.]" (*Ibid*.) The trust could be revoked "by an instrument in writing signed by either Settlor and delivered to the Trustee and the other Settlor[.]" (*Id*. at p. 1189.) After one spouse suffered a serious injury, the other spouse executed several amendments to the trust, without the first spouse's signature. (*Ibid*.)

The majority opinion in *King* held that these amendments were invalid because they did not comply with the method of modification described in the trust instrument. (*King, supra,* 204 Cal.App.4th at p. 1194.) The majority recognized that, under section 15401, a method for *revocation* must be explicitly exclusive to displace the statutory method. (*Id*. at p. 1192.) But it held that, under section 15402, a trust instrument need only "provide[] otherwise" for its method of *modification* to be exclusive. (*Ibid*.) The *King* majority explained, "The qualification '[u]nless the trust instrument provides otherwise' indicates that if any modification method is specified in the trust, that method must be used to amend the trust." (*Id*. at p. 1193.) Under prior law, "courts applied the rules governing trust revocations to trust modifications. However, when the Legislature enacted sections 15401 and 15402, it differentiated between trust revocations and modifications. This indicates that the Legislature no longer intended the same rules to apply to both revocation and modification." (*Ibid*.) To apply the same rules, the *King* majority believed, would leave section 15402 as mere surplusage. (*Ibid*.)

The *King* majority concluded, "The trust specified a modification method and thus, under section 15402 the trust could only be amended in that manner. The settlors bound themselves to a specific method of modification. If we were to hold otherwise, especially where, as here, the amendment provision is more restrictive than the revocation provision, we

7

would cause the amendment provision to become superfluous and would thereby thwart the settlors' intent." (*King*, *supra*, 204 Cal.App.4th at p. 1194.)

One justice in *King* disagreed. The dissenting opinion believed that the new, higher standard for exclusivity for revocation also applied to modification. (*King*, *supra*, 204 Cal.App.4th at p. 1194 (dis. opn. of Detjen, J.).) The dissent focused on the purpose of sections 15401 and 15402, which was to permit greater flexibility for the settlor of a revocable trust. (*Id*. at pp. 1195-1196.) The dissent explained, "[T]he 1987 adoption of section 15401 in the terms proposed by the [California Law Revision Commission] reflected a clear legislative choice to change the existing law in favor of permitting greater flexibility for the settlor, and rejecting the rule that the majority here asserts, which would designate a method of modification as exclusive simply because it has been set forth in the trust instrument." (*Id*. at p. 1196.) The dissent continued, "[P]rior to 1987, modification of a trust was viewed as merely one aspect of the more inclusive power to revoke a trust. [Citation.] In recommending the 1987 revisions to the law of trusts, however, the Commission set forth explicitly the nature of the implied power of modification: 'Under general principles the settlor, or other person holding the power to revoke, may modify as well as terminate a revocable trust. [Fn. omitted.] The proposed law codifies this rule and also makes clear that the method of modification is the same as the method of termination, barring a contrary provision in the trust.' " (*Ibid*.)

"In summary, section 15401 was written specifically to change the restrictive rule adopted in [prior caselaw]. [Citation.] And section 15402 was added, not to establish a different rule from section 15401, as the majority asserts [*King*, *supra*, 204 Cal.App.4th] at pp. 1192-1193 (maj. opn.), but in

8

order to adopt the same flexible rule for modifications as for revocations unless 'bar[red]' by 'a contrary provision in the trust' [citation] or, in the language of statute, '[u]nless the trust instrument provides otherwise' (§ 15402). . . . Nothing in the Commission's comments on sections 15401 and 15402 supports the position that, even though [the prior rule] should not apply to revocations (§ 15401), it should, as the majority asserts, apply to modifications under section 15402." (*King*, at p. 1196 (dis. opn. of Detjen, J.).)

The *King* dissent found support in *Huscher*, *supra*, 121 Cal.App.4th at pages 960 through 963, which examined both current and prior law. (*King*, *supra*, 204 Cal.App.4th at p. 1197 (dis. opn. of Detjen, J.).) "The trust instrument in *Huscher* provided that the trustor ' "may at any time amend any of the terms of [the] trust by an instrument in writing signed by the Trustor and the Trustee." ' [Citation.] The *Huscher* court found that this provision did not provide explicit exclusivity, that is, the language did not expressly preclude the settlor from using alternate statutory methods to modify the trust instrument." (*Ibid*.) The dissent explained that *Huscher* was inconsistent with the interpretation of section 15402 advanced by the *King* majority: "Instead, *Huscher* specifically stated, in reference to section 15402, 'Under the current law, the statutory procedure for modifying a trust can be used unless the trust provides a modification procedure and explicitly makes that method exclusive.' " (*King*, at p. 1197, quoting *Huscher*, at p. 967.) (The *King* majority responded that the discussion of section 15402 in *Huscher* was dicta and unpersuasive, see *King*, at p. 1193, fn. 3.)

The *King* dissent concluded that the trust instrument at issue "did not explicitly exclude use of the alternative statutory method for modification or revision" so the statutory method was available. (*King*, *supra*,

9

204 Cal.App.4th at p. 1198 (dis. opn. of Detjen, J.).)  Because the amendments complied with the statute, they were valid modifications.  (*Ibid*.)

We do not need to comment on *King*'s interpretation of its trust instrument.  The language of that instrument differs significantly from the language of the trust agreement here.  Nor do we need to consider whether *King* was ultimately correctly decided on its facts.  But, as a general matter, we conclude the *King* dissent more accurately captures the meaning of section 15402 than the majority opinion.  Section 15402 cannot be read in a vacuum.  It does not establish an independent rule regarding modification.  It recognizes the existing principle that "a power of revocation implies the power of modification."  (Cal. Law Revision Com. com., West's Ann. Prob. Code, *supra*, foll. § 15402.)  The method of modification is therefore the same as the method of revocation, "[u]nless the trust instrument provides otherwise," i.e., unless the trust instrument distinguishes between revocation and modification.  (§ 15402.)  The California Law Revision Commission made this point explicit:  " 'Under general principles the settlor, or other person holding the power to revoke, may modify as well as terminate a revocable trust.  [Fn. omitted.]  The proposed law codifies this rule and also makes clear that the method of modification is the same as the method of termination, barring a contrary provision in the trust.' "  (*King, supra*, 204 Cal.App.4th at p. 1196 (dis. opn. of Detjen, J.), quoting Selected 1986 Trust and Probate Legislation (Sept. 1986) 18 Cal. Law Revision Com. Rep. [1986] p. 1271.)  Under this interpretation, section 15402 is not mere surplusage, as the *King* majority believed.  As the California Law Revision Commission's comment explains, it codifies the existing rule that the power of revocation includes the power of modification, thus an available method of revocation is also an available method of modification—unless the trust

10

instrument provides otherwise.  (See Cal. Law Revision Com. com., West's Ann. Prob. Code, *supra*, foll. § 15402.)

With these principles in mind, we turn to the language of the trust agreement at issue here.  "The primary duty of a court in construing a trust is to give effect to the settlor's intentions." (*Barefoot v. Jennings* (2020) 8 Cal.5th 822, 826.)  Where, as here, interpretation of the instrument does not depend on disputed extrinsic evidence, we consider the issue de novo. (*Gardenhire v. Superior Court* (2005) 127 Cal.App.4th 882, 888.)

The language of Bertsch's trust agreement does not distinguish between revocation and modification.  It reserves the following right to the settlor:  "The right by an acknowledged instrument in writing to revoke or amend this Agreement or any trust hereunder."  Because the trust does not distinguish between revocation and modification, it does not "provide otherwise" than the general rule, and under section 15402 the trust may be modified by any valid method of revocation.  Moreover, as a reservation of rights, it does not appear Bertsch intended to bind herself to the specific method described in the trust agreement, to the exclusion of other permissible methods.  Because the method of revocation and modification described in the trust agreement is not explicitly exclusive (and no party argues otherwise), the statutory method of revocation was available under section 15401.  (See *Masry v. Masry* (2008) 166 Cal.App.4th 738, 742 [reservation of rights not explicitly exclusive].)  Bertsch complied with the

11

statutory method by signing the 2018 amendment and delivering it to herself as trustee. It was therefore a valid modification of the trust agreement.[2]

Finally, in her opening brief, Haggerty requests that we find the 2016 amendment valid under the method of amendment specified in the trust agreement. It does not appear the probate court addressed this issue. Our decision is without prejudice to whatever contentions the parties may make regarding that amendment.

---

[2] Again, we need not and do not consider the situation in *King*, where the trust instrument did distinguish between methods for revocation and modification and imposed an arguably more stringent requirement on modification. The circumstances here are materially different. This appeal is also distinguishable from *Pena v. Dey* (2019) 39 Cal.App.5th 546, 552, where the court cited *King* and found that the method of amendment described in the trust instrument governed. The method of amendment described in the trust instrument was the same as the statutory method under the circumstances, so the issue was not clearly presented. (Compare *id.* at pp. 552, 551 [amendment " 'shall be made by written instrument signed by the settlor and delivered to the trustee' "] with § 15401, subd. (a)(1) [revocation made "[b]y a writing, other than a will, signed by the settlor or any other person holding the power of revocation and delivered to the trustee"].) Haggerty's reliance on this court's opinion in *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334 is likewise unpersuasive for the reasons discussed in *Huscher*, *supra*, 121 Cal.App.4th at pages 966 through 967 and footnote 13.

DISPOSITION

The order is affirmed.  The parties shall bear their own costs on appeal.


                                                                    GUERRERO, J.

WE CONCUR:



McCONNELL, P. J.



DATO, J.