Filed 5/19/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBERT DIAZ et al., | B318131 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STPB02264) |
| v. | |
| MARISELA ZUNIGA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Brenda J. Penny, Judge. Affirmed.

Law Office of Timothy G. Mishler and Timothy G. Mishler for Plaintiffs and Appellants.

Law Office of Robert Mills and Robert Mills for Defendant and Respondent.

We must decide which of two provisions governs a settlor's purported amendment of a revocable trust—Probate Code section 15402[1] or the terms of the trust—when the trust instrument specifies how the trust may be modified but does not state that the specified modification method is exclusive. Courts are divided on this issue, which is currently pending before the California Supreme Court. (Compare *Balistreri v. Balistreri* (2022) 75 Cal.App.5th 511 (*Balistreri*), review granted, May 11, 2022, S273909; *King v. Lynch* (2012) 204 Cal.App.4th 1186, 1192, 1193 (*King*) [trust terms govern] with *Haggerty v. Thornton* (2021) 68 Cal.App.5th 1003, 1010–1012 (*Haggerty*), review granted, Dec. 22, 2021, S271483.)[2]

We conclude the trust terms governing amendments control and apply the reasoning of the courts in *Balistreri* and *King*. The settlor's purported amendment in this case did not conform to the trust terms and is invalid. We therefore affirm the judgment invalidating the purported amendment.

---

[1] All further statutory references are to the Probate Code.

[2] In its order granting review of *Haggerty,* the Supreme Court stated: "Pending review, the opinion of the Court of Appeal . . . may be cited, not only for its persuasive value, but also for the limited purpose of establishing the existence of a conflict in authority that would in turn allow trial courts to exercise discretion under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456, to choose between sides of any such conflict." (*Haggerty, supra,* S271483.) In its order granting review of *Balistreri,* the Supreme Court stated: "Further action in this matter is deferred pending consideration and disposition of a related issue in *Haggerty v. Thornton,* S271483." (*Balistreri, supra,* S273909.)

# BACKGROUND

A settlor purports to amend his revokable trust. He is both the trustor and trustee. The trust document (the Trust) provides that to amend the Trust he must send the document by certified mail to the trustee. This he did not do. Here we decide his purported amendment did not conform to the trust terms and is invalid. The Trust became irrevocable upon the death of the settlor, Mateo Diaz (Mateo), on May 6, 2018. Soon after Mateo's death, a purported trust amendment dated in 2007 was found in an envelope among papers in a container kept in Mateo's bedroom closet. The stamped envelope was addressed to his attorney. There is no evidence in the record to indicate Mateo discussed the 2007 document with anyone or that he mailed it to his lawyer.

Article X of the Trust governs trust amendments. It states in relevant part: "The Trustor may at any time during Trustor's lifetime amend any of the terms of this instrument by an instrument in writing signed by the Trustor and delivered by certified mail to the Trustee."

Article IX of the Trust governs revocations and states in relevant part that "[t]his Trust may be revoked in whole or in part by the Trustor during Trustor's lifetime."

*The Parties*

Appellants Robert Diaz (Robert), Jessie Diaz, Alex Diaz, Carmen Ortega, Gloria Redondo, Linda Johnson, Annette Roberts, and Salvador Diaz (collectively appellants) are beneficiaries of the Trust. Robert is also a co-trustee of the Trust. Respondent Marisela Zuniga (Marisela) is also a co-trustee and beneficiary of the Trust.

3

*Significance of the Trust Amendment*

The 2007 document purported to alter the distribution of certain Trust assets upon Mateo's death, substantially reallocating the value of the distributions among the various beneficiaries. The Trust assets include two real property parcels located in Montclair and Temple City.

In the original Trust declaration, the Montclair property was to be distributed equally to all of Mateo's seven siblings; and the Temple City property was to be distributed solely to Marisela, with the exception of the sum of $100,000, which was to be distributed solely to Annette Louise Roberts Diaz. In the 2007 document, the Montclair property is to be distributed equally to only two of Mateo's siblings, and the Temple City property is to be distributed 10 percent to Marisela, 20 percent to Annette Louise Roberts Diaz, and 10 percent to each of Mateo's seven siblings.

*The Trial and Judgment*

Robert and Marisela, in their respective capacities as co-trustees of the Trust, filed separate petitions requesting instructions as to whether the 2007 document should be treated as a valid Trust amendment. The parties submitted a joint trial statement and a joint statement of stipulated facts and agreed to the admission of certain documents. The matter was tried on April 28, 2021.

On June 30, 2021, the trial court issued a final statement of decision ruling that the 2007 document did not constitute a valid amendment to the Trust because Mateo did not deliver the 2007 document to himself as trustee by certified mail, as specified in Article X of the Trust.

A judgment decreeing that the 2007 document did not constitute a valid amendment to the Trust was entered on January 4, 2022. This appeal followed.

## DISCUSSION

A. *Applicable Law and Standard of Review*

The de novo standard of review "applies to questions of statutory construction [citation] and to the interpretation of written instruments, including a trust instrument, unless the interpretation depends on the competence or credibility of extrinsic evidence or a conflict in that evidence." (*Pena v. Day* (2019) 39 Cal.App.5th 546, 551 (*Pena*).) "The paramount rule in construing [a trust] instrument is to determine intent from the instrument itself and in accordance with applicable law." (*Brown v. Labow* (2007) 157 Cal.App.4th 795, 812.) When determining the trustor's intent, courts must "look first to the terms of [the] trust." (*Burch v. George* (1994) 7 Cal.4th 246, 256.)

B. *Probate Code Sections 15401 and 15402*

The Probate Code governs modification and revocation of a trust. Section 15401, subdivision (a) sets forth alternative methods for revocation. Under the first method, a trust may be revoked by "compliance with any method of revocation provided in the trust instrument." (§ 15401, subd. (a)(1).) Under the second method, a trust may be revoked in "a writing, other than a will, signed by the settlor . . . and delivered to the trustee during the lifetime of the settlor." (*Id.* subd. (a)(2).) The statute states, however, that if "the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation," that method must

5

be used. (*Ibid.*; *Pena, supra,* 39 Cal.App.5th at pp. 551, 552.) For the trust revocation terms to override the statutory revocation provisions, the trust must contain "an explicit statement that the trust's revocation method is exclusive." (*Cundall v. Mitchell-Clyde* (2020) 51 Cal.App.5th 571, 581.) Section 15401, subdivision (a)(2) accordingly "'provides a default method of revocation where the trust is silent on revocation or does not explicitly provide the exclusive method.' [Citation.]" (*Id.* at p. 587, italics omitted.)

Section 15402 governs modification of a trust. That statute states: "Unless the trust instrument provides otherwise, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation." (§ 15402.) Under section 15402, when "the trust instrument is silent on modification, the trust may be modified in the same manner in which it could be revoked, either statutorily or as provided in the trust instrument." (*King, supra,* 204 Cal.App.4th at p. 1192.)

C. *California's Divided Case Authority*

California courts are divided as to what happens when the trust instrument specifies how the trust may be modified but does not state that the specified modification method is exclusive. In one line of cases, courts have held that when the trust instrument "specifies how the trust is to be modified," then "that method must be used to amend the trust." (*King, supra,* 204 Cal.App.4th at pp. 1192, 1193; *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334, 1343–1345; *Balistreri, supra,* 75 Cal.App.5th at p. 518.)

In contrast, the court in *Haggerty* and the dissent in *King* concluded that unless the trust terms expressly preclude the settlor from using alternative statutory methods to modify the trust instrument, the modification procedures set forth in section 15402 may be used. (*Haggerty,*

6

*supra,* 68 Cal.App.5th at pp. 1011–1012; *King, supra,* 204 Cal.App.4th at pp. 1195–1198 (dis. opn. of Detjen, J.).)

      1.  *King* and *Balistreri*

The majority in *King* and the court in *Balistreri* reasoned that sections 15401 and 15402 impose different rules for modifying and revoking a trust. Section 15401, subdivision (a)(2) states that a trust may be revoked by a writing signed by the settlor and delivered to the trustee during the settlor's lifetime.  (§ 15401, subd. (a)(2).)  That statute further states however, that "[i]f the trust instrument *explicitly* makes the method of revocation provided in the trust instrument the *exclusive* method of revocation, the trust may *not* be revoked pursuant to this paragraph."  (§ 15401, subd. (a)(2), italics added.)

Section 15402, in contrast, states that "[u]nless the trust instrument provides otherwise," a settlor may modify the terms of a revocable trust by the procedure for revocation set forth in section 15401.  (§ 15402.)  The qualifying language "[u]nless the trust instrument provides otherwise," the majority in *King* held, means that the trust terms control the procedure for modifying the trust.  (*King, supra,* 204 Cal.App.4th at p. 1193.)  Thus, "'section 15402 recognizes a trustor may bind himself or herself to a specific method of modification or amendment of a trust by including that specific method in the trust agreement.'"  (*Ibid.,* quoting *Conservatorship of Irvine, supra,* 40 Cal.App.4th at p. 1344.)  The *King* majority noted that before 1986, courts applied the rules governing trust revocations to trust modifications, but "when the Legislature enacted sections 15401 and 15402, it differentiated between trust revocations and modifications," indicating "that the Legislature no longer intended the same rules to apply to both revocation and modification." (*King,* at p. 1193.)

7

The court in *Balistreri* agreed, noting that "[h]ad the Legislature intended for section 15402 to require an explicit statement of exclusivity for modification procedures, it could have so stated, as it did in section 15401." (*Balistreri, supra,* 75 Cal.App.5th at p. 519.)

 2. *Haggerty and the King Dissent*

 The court in *Haggerty, supra,* 68 Cal.App.5th 1003 reached a different result. In that case, the trust provided that the settlor reserved "'[t]he right by an acknowledged instrument in writing to revoke or amend this Agreement or any trust hereunder.'" (*Id.* at p. 1006.) The settlor drafted and signed an amendment but did not have the amendment notarized. (*Ibid.*) Although the amendment was not "acknowledged" as specified in the trust, the court in *Haggerty* concluded the settlor nevertheless could amend the trust pursuant to the revocation procedure set forth in section 15401. (*Id.* at p. 1012.)

 The court in *Haggerty* construed the statutory language "[u]nless the trust instrument provides otherwise" in section 15401 as meaning "unless the trust instrument distinguishes between revocation and modification." (*Haggerty, supra*, 68 Cal.App.5th at p. 1011.) Because the trust instrument at issue did not distinguish between revocation and modification,[3] the court in *Haggerty* concluded that it did not "'provide otherwise'" within the meaning of section 15401 and could be modified by any valid method of

---

[3] The trust instrument in *Haggerty* contained a single provision governing both revocation and modification in the following reservation of rights by the settlor: "'The right by an acknowledged instrument in writing to revoke or amend this Agreement or any trust hereunder.'" (*Haggerty, supra,* 68 Cal.App.5th at p. 1006.)

revocation specified in section 15402.  (*Haggerty, supra,* 68 Cal.App.5th at p. 1012.)  Citing the *King* dissent, the *Haggerty* court reasoned:  "Section 15402 cannot be read in a vacuum.  It does not establish an independent rule regarding modification.  It recognizes the existing principle that 'a power of revocation implies the power of modification.'  [Citation.]  The method of modification is therefore the same as the method of revocation."  (*Haggerty,* at p. 1011.)

The *King* dissent, on which the *Haggerty* court relied, cited  as support for its interpretation the California Law Revision Commission's 1986 recommendations concerning then proposed sections 15401 and 15402. According to the *King* dissent, the proposed statutory revisions "reflected a clear legislative choice to change the existing law in favor of permitting greater flexibility for the settlor, and rejecting the rule . . . which would designate a method of modification as exclusive simply because it has been set forth in the trust instrument."  (*King, supra,* 204 Cal.App.4th at p. 1196, dis. opn. of Detjen, J.).)  The *King* dissent focused on the following California Law Revision Commission comment:  "'Under general principles the settlor, or other person holding the power to revoke, may modify as well as terminate a revocable trust.  The proposed law codifies this rule and also makes clear that the method of modification is the same as the method of termination, barring a contrary provision in the trust.'"  (*Ibid.,* quoting Selected 1986 Trust and Probate Legislation (Sept. 1986) 18 Cal. Law Revision Com. Rep. (1986), p. 1271.)  Because the trust instrument at issue in *King* "did not explicitly exclude use of the alternative statutory method for modification or revision," the dissent argued that the statutory method was available.  (*King, supra*, 204 Cal.App.4th at p. 1198, dis. opn. of Detjen, J.)

9

The court in *Haggerty* found that "the *King* dissent more accurately captures the meaning of section 15402 than the majority opinion." (*Haggerty, supra,* 68 Cal.App.5th at p. 1011.)

D. *The Trust Modification Terms Control Here*

We find the reasoning of the courts in *Balistreri* and the *King* majority more persuasive than that in *Haggerty* and the *King* dissent. The plain language of section 15402 states that a settlor may modify the trust by the procedure for revocation set forth in section 15401 "[u]nless the trust instrument provides otherwise." That qualifying statutory language is clear and unambiguous, particularly when read together with section 15401.[4] Unlike section 15401, section 15402 does not require the trust instrument to "explicitly" state that the method of revocation provided in the trust instrument is the "exclusive" method of modification for the trust terms to displace the statutory modification provisions.

The *King* dissent's reliance on the California Law Revision Commission's comment as support for the court's interpretation of section

---

[4] Although we disagree with the *Haggerty* court's interpretation of the qualifying language "unless the trust instrument provides otherwise" in section 15402 as meaning "unless the trust instrument distinguishes between revocation and modification," our holding is consistent with that interpretation. The trust instrument in this case distinguishes between revocation and modification. Article IX addresses revocation and includes no specific procedure for doing so. It simply states: "This Trust may be revoked in whole or in part by the Trustor during Trustor's lifetime." Article X, in contrast, includes a specific procedure for trust modification. It states that the Trustor may "amend any of the terms of this instrument by an instrument in writing signed by the Trustor and delivered by certified mail to the Trustee."

10

15402 is unpersuasive. As the court in *Balistreri* noted, the Legislative Counsel's summary digest accompanying the Legislature's enactment of sections 15401 and 15402 reflects a contrary intent. The Legislative Counsel's Digest explains that section 15402 would "'allow the modification of the trust, *unless the instrument provides otherwise*, by the same revised procedure for revocation if the trust is revocable by the settlor.'" (*Balistreri, supra,* 75 Cal.App.5th at p. 521, quoting Legis. Counsel's Dig., Assem. Bill No. 2652 (1985-1986 Reg. Sess.), italics added.)

We reject appellants' argument that delivery by certified mail and personal delivery are not meaningfully different and that distinguishing between the two would cause an absurd result in this case. The cases appellants cite do not support their position. (See, e.g., *Pena, supra,* 39 Cal.App.5th 546, *Masry v. Masry* (2008) 166 Cal.App.4th 738 (*Masry*) and *Gardenhire v. Superior Court* (2005) 127 Cal.App.4th 882 (*Gardenhire*).) The trust provisions at issue in *Pena* and *Gardenhire* did not require delivery by certified mail but provided that any amendment or revocation be made in writing signed by the settlor and simply "'delivered to the trustee.'" (*Pena,* at p. 549; *Gardenhire,* at p. 886.) *Masry* concerned revocation, not amendment of a trust, and is inapposite. (*Masry,* at pp. 739–740.)

Mateo's decision to require amendments to the Trust to be in writing, signed by the trustor and delivered to the trustee by certified mail—a substantially more detailed and cumbersome procedure than that for revocation in Article IX of the Trust—evidences an intent to ensure the bona fides of any such amendments. As one appellate court has noted, "'[p]rovisions like these are designed to protect settlors from possible undue influence of people who would like to benefit from the trust assets.' [Citation.]" (*Conservatorship of Irvine, supra,* 40 Cal.App.4th at p. 1343.)

11

Had Mateo followed the amendment procedures set forth in Article X of the trust, his intention to modify the trust terms would not be in doubt. On the facts presented here, Mateo's intentions are unclear. After drafting and signing the 2007 document, Mateo may have placed the document in his closet in order to reflect on the proposed changes before finalizing them. That he did not do so by sending the document to himself by certified mail may indicate that he decided against the modifications.

Section 15402 does not apply here because Article X of the Trust provides a specific procedure for modification of the trust terms. Article X therefore displaces the alternative statutory modification procedures under sections 15401 and 15402. A contrary result would frustrate the intent of the trustor, Mateo, who chose a specific method for amending the Trust terms. (*King, supra,* 204 Cal.App.4th at p. 1193.) The 2007 document does not conform to that method and does not constitute a valid amendment of the Trust. The trial court did not err in reaching this conclusion.

That Article X of the Trust uses permissive, rather than mandatory language, stating that the trustor "may" amend the Trust terms, does not make the alternative statutory procedures available. Article X sets forth a specific method for amending the Trust terms—"by an instrument in writing signed by the Trustor and delivered by certified mail to the Trustee." Trust amendments may be made only by this method. (*King, supra,* 204 Cal.App.4th at pp. 1192, 1193.)

We reject appellants' argument that the 2007 document is relevant to determining Mateo's intent with regard to Trust amendments. The relevant and operative document is the Trust instrument itself. (*Burch v. George, supra,* 7 Cal.4th at p. 256; *Brown v. Labow, supra,* 157 Cal.App.4th at p. 812.)

12

Mateo's intent as trustor is evident in Article X, which sets forth a specific method for amending the Trust terms.

## DISPOSITION

The judgment is affirmed. Marisela shall recover her costs on appeal.

**CERTIFIED FOR PUBLICATION**


ZUKIN, J.*

WE CONCUR:


CURREY, Acting P. J.


MORI, J.

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.