# IN THE SUPREME COURT OF CALIFORNIA

BRIANNA MCKEE HAGGERTY,
Plaintiff and Appellant,

v.

NANCY F. THORNTON et al.,
Defendants and Respondents.

S271483

Fourth Appellate District, Division One
D078049

San Diego County Superior Court
37-2019-00028694-PR-TR-CTL

February 8, 2024

Justice Liu authored the opinion of the Court, in which Acting Chief Justice Kruger and Justices Corrigan, Groban, Jenkins, Evans, and Poochigian[*] concurred.

---

[*] Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

HAGGERTY v. THORNTON

S271483


Opinion of the Court by Liu, J.


This case concerns the methods for modifying a revocable trust. Section 15402 of the Probate Code states that "[u]nless the trust instrument provides otherwise, . . . the settlor may modify the trust by the procedure for revocation." (Prob. Code, § 15402; all undesignated statutory references are to this code.) Section 15401 sets out the procedures for revocation: Trusts may be revoked by complying with any method provided in the trust instrument. (§ 15401, subd. (a)(1).) If the trust instrument explicitly makes that method exclusive, then the trust may be revoked only in that manner. (§ 15401, subd. (a)(2).) If not, then the trust may also be revoked by the statutory method — "a writing, other than a will, signed by the settlor or any other person holding the power of revocation and delivered to the trustee during the lifetime of the settlor or the person holding the power of revocation." (*Ibid.*)

It is undisputed that if the trust instrument is silent on modification, the trust may be modified in the same manner in which it could be revoked, either via the statutory method or via any revocation method provided in the trust instrument. In this case, we consider the circumstances under which the statutory method is available for modification if the trust instrument specifies a method for modification. We hold that under section 15402, a trust may be modified via the section 15401 procedures for revocation, including the statutory method, unless the trust instrument provides a method of modification and explicitly

1

makes it exclusive, or otherwise expressly precludes the use of revocation procedures for modification.

**I**.

Brianna McKee Haggerty appeals an order of the probate court finding a trust agreement was validly amended, thereby excluding her from distribution. Haggerty's aunt, Jeane M. Bertsch, created a trust in 2015. The trust agreement included a provision reserving "[t]he right by an acknowledged instrument in writing to revoke or amend this Agreement or any trust hereunder." In 2016, Bertsch drafted an amendment providing for a distribution to Haggerty. The amendment was signed by Bertsch and notarized.

In 2018, Bertsch drafted an amendment providing that half of her assets would go to various beneficiaries upon her death, including the Union of Concerned Scientists, Patricia Galligan, and Racquel Kolsrud, who are respondents in this case. Haggerty was not listed as one of the beneficiaries. The 2018 amendment was signed by Bertsch but not notarized. Thus, the 2018 amendment was compliant with the statutory method but not with the method of modification specified in the trust instrument.

After Bertsch's death, Haggerty filed a petition to determine the validity of the 2018 amendment. Haggerty argued that the amendment does not qualify as an "acknowledged instrument" because it was not notarized and therefore was not modified pursuant to the method of modification specified in the trust instrument. In a minute order, the probate court held that the 2018 amendment was valid.

The Court of Appeal affirmed, holding that Bertsch's 2018 amendment was a valid modification pursuant to the statutory method. (*Haggerty v. Thornton* (2021) 68 Cal.App.5th 1003, 1012 (*Haggerty*); see §§ 15401, subd. (a)(2), 15402.) The court concluded that the statutory method was available for modification because Bertsch's trust agreement "does not distinguish between revocation and modification" and because "the method of revocation and modification described in the trust agreement is not explicitly exclusive." (*Haggerty*, at p. 1012.)

We granted review to resolve a split of authority regarding the circumstances under which the statutory method is available for modification when a method of modification is specified in the trust instrument.

## II.

Assembly Bill No. 2652 (1985–1986 Reg. Sess.) enacted sections 15401 and 15402 in 1986 as part of a general reorganization of trust laws recommended by the California Law Revision Commission (Commission). (See *Huscher v. Wells Fargo Bank* (2004) 121 Cal.App.4th 956, 960, fn. 2 (*Huscher*); Recommendation Proposing the Trust Law (Dec. 1985) 18 Cal. Law Revision Com. Rep. (1986) pp. 567–569 (Recommendation Proposing the Trust Law).) Revocation was previously governed by Civil Code former section 2280. (*Huscher*, at p. 961.) No statute specifically addressed modification. Rather, courts held that, in general, the power of revocation implied the power of modification, and they applied the rules governing trust revocation to trust modification. (*Id.*, at p. 962, fn. 5; see *Estate of Lindstrom* (1987) 191 Cal.App.3d 375, 385, fn. 11 ["[R]evocation and amendment are fungible. 'The unrestricted

power to revoke implies a power to amend without revoking; i.e., it is unnecessary for the trustor to take the circuitous steps of complete revocation and creation of a new trust with the desired changes.' "].)

Since 1986, two separate statutory provisions have governed trust revocation and modification. Section 15401 governs the procedures for revocation. Under this provision, a revocable trust "may be revoked in whole or in part by any of the following methods: [¶] (1) By compliance with any method of revocation provided in the trust instrument. [¶] (2) By a writing, other than a will, signed by the settlor or any other person holding the power of revocation and delivered to the trustee during the lifetime of the settlor or the person holding the power of revocation." (§ 15401, subd. (a)(1)–(2).) We will refer to the second method as the statutory method. Section 15401 further provides: "If the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation, the trust may not be revoked pursuant to [the statutory method]." (§ 15401, subd. (a)(2).)

Section 15402 governs the procedures for modification. It provides: "Unless the trust instrument provides otherwise, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation." (§ 15402.) "Thus, if the trust instrument is silent on modification, the trust may be modified in the same manner in which it could be revoked," either via the statutory method or via the revocation method provided in the trust instrument. (*King v. Lynch* (2012) 204 Cal.App.4th 1186, 1192 (*King*); accord, *Diaz v. Zuniga* (2023) 91 Cal.App.5th 916, 922 (*Diaz*); *Balistreri v. Balistreri* (2022) 75 Cal.App.5th 511, 516 (*Balistreri*); *Pena v. Dey* (2019) 39 Cal.App.5th 546 (*Pena*).) But a revocable trust may not be modified "by the procedure for

revocation" where the trust instrument "provides otherwise." (§ 15402.) This case turns on the meaning of "provides otherwise."

The Courts of Appeal have put forward three interpretations. One interpretation, advanced by *King*, is that " '[u]nless the trust instrument provides otherwise' indicates that if any modification method is specified in the trust, that method must be used to amend the trust." (*King, supra*, 204 Cal.App.4th at p. 1193; accord, *Diaz, supra*, 91 Cal.App.5th at p. 924 [following *King*]; *Balistreri, supra*, 75 Cal.App.5th at p. 518 [same]; *Pena, supra*, 39 Cal.App.5th at p. 552 [same]; see also *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334, 1334 (*Irvine*).) A second interpretation, put forward by *Huscher* and adopted by the *King* dissent and by the Court of Appeal in this case, is that "unless the trust instrument provides otherwise" means "unless the trust provides a modification procedure and explicitly makes that method exclusive." (*Huscher, supra*, 121 Cal.App.4th at p. 967; see *Haggerty, supra*, 68 Cal.App.5th at p. 1012; *King*, at p. 1197 (dis. opn. of Detjen, J.).) The Court of Appeal here also advanced a third interpretation: that " '[u]nless the trust instrument provides otherwise' " also means "unless the trust instrument distinguishes between revocation and modification." (*Haggerty*, at p. 1011.)

## A.

To resolve this issue, we begin with the text of section 15402. As noted, the phrase "[u]nless the trust instrument provides otherwise" qualifies the provision that follows it, i.e., that the settlor of a revocable trust "may modify the trust by the procedure for revocation." (§ 15402.) The most natural reading of this sentence is that the settlor may modify the trust using

any procedure for revocation unless the trust instrument says that the settlor may not (i.e., "provides otherwise"). This is supported by the plain meaning of the term "otherwise." (See, e.g., *Marx v. General Revenue Corp.* (2013) 568 U.S. 371, 377 ["A statute 'provides otherwise' than Rule 54(d)(1) if it is 'contrary' to the Rule."].) A trust term would be contrary to the authorization provided in section 15402 if it were to preclude the use of any of the section 15401 revocation procedures for modification. It could do so by specifying an exclusive method of modification in the trust instrument (*Haggerty*, *supra*, 68 Cal.App.5th at p. 1012; *King*, 204 Cal.App.4th at p. 1196 (dis. opn. of Detjen, J.); *Huscher*, *supra*, 121 Cal.App.4th at p. 967) or by otherwise precluding modification via the revocation procedures provided in section 15401. But a trust instrument that merely specifies a method of modification without limiting settlors to the use of that method does not preclude the use of the revocation procedures and therefore does not "provide[] otherwise" from the general rule. (§ 15402.)

This interpretation is consistent with the Third Restatement of Trust Laws. (See *Estate of Giraldin* (2012) 55 Cal.4th 1058, 1072 ["California courts have considered the Restatement of Trusts in interpreting California trust law."].) The Restatement provides: "If the terms of the trust reserve to the settlor a power to . . . amend the trust *exclusively* by a particular procedure, the settlor can exercise the power only by substantial compliance with the method prescribed." (Rest.3d Trusts, § 63, com. i.) However, if "the terms of the trust provide a method for . . . amendment" but "do not make that method exclusive, . . . the settlor's [modification] power can be exercised *either* in the specified manner or by a method [that is available

when no modification method is specified in the trust instrument].” (*Id.*, § 63, com. i; *id.*, § 63, com. h.)

In this case, the Court of Appeal held that a trust instrument may preclude the use of revocation procedures for modification by “distinguish[ing] between revocation and modification.” (*Haggerty*, *supra*, 68 Cal.App.5th at p. 1011.) On this view, by treating revocation and modification differently — such as by specifying different procedures for revocation and modification or by specifying a method for modification but not for revocation — the settlor “provides otherwise” from the general rule that a settlor “may modify the trust by the procedure for revocation.” (§ 15402.) The court reasoned that distinguishing between revocation and modification is “ ‘ “contrary” ’ ” to the general rule that the method of modification is the same as the method of revocation. (*Haggerty*, at p. 1011.)

In *King*, the court held that a trust instrument “provides otherwise” from the general rule if any modification method is specified in the trust, regardless of whether that method is made exclusive. (*King*, *supra*, 204 Cal.App.4th at p. 1193; accord, *Diaz*, *supra*, 91 Cal.App.5th at p. 924; *Balistreri*, *supra*, 75 Cal.App.5th at p. 518; *Pena*, *supra*, 39 Cal.App.5th at p. 552.) “[W]hen the Legislature enacted sections 15401 and 15402, it differentiated between trust revocations and modifications. This indicates that the Legislature no longer intended the same rules to apply to both revocation and modification. [¶] If we were to . . . hold that a trust may be modified by the revocation procedures set forth in section 15401 unless the trust explicitly provides that the stated modification method is exclusive, section 15402 would become surplusage. Rather than enacting section 15402, the Legislature could have combined revocation

and modification into one statute. Moreover, . . . the Legislature knew how to limit the exclusivity of a revocation method provided in a trust and chose not to impose such a limitation on modifications in section 15402." (*King*, at p. 1193.)

## B.

Despite this natural reading of the word "otherwise," several Courts of Appeal have interpreted section 15402 differently. Even if the text is susceptible to more than one reasonable construction, legislative history supports the interpretation above. The Legislature intended section 15402 to codify the preexisting rule that the power of revocation implies the power of modification and to expand the availability of the statutory method for both revocation and modification.

Assembly Bill No. 2652 (1985–1986 Reg. Sess.) was enacted "to effectuate recommendations of the California Law Revision Commission." (Exec. Sect. John H. DeMoully, letter to Chief Clerk James D. Driscoll (May 2, 1986) 4 Assem. J. (1985–1986 Reg. Sess.) p. 7308.) The Legislature thus relied on the intent and commentary of the Commission in passing the bill. (See e.g., Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2652 (1985–1986 Reg. Sess.) as amended June 10, 1986, p. 7 [describing the "[n]eed for legislation" in terms of what "[t]he Commission believes" (underscoring omitted)]; *ibid.* ["This bill is a result of extensive study and recommendations by the California [L]aw Revision Commission."].)

In explaining its decision to recommend codifying section 15402, the Commission said: "Under general principles the settlor, or other person holding the power to revoke, may modify as well as terminate a revocable trust. [Fn. omitted.] The proposed law codifies this rule and also makes clear that the

method of modification is the same as the method of termination, barring a contrary provision in the trust." (Recommendation Proposing the Trust Law, *supra*, at p. 568; see also *id.* at p. 636 ["Power to revoke includes power to modify" (boldface omitted)]; *ibid.* ["Section 15402 . . . codifies the general rule that a power of revocation implies the power of modification"].) The Commission's commentary makes clear that section 15402 was enacted to codify the preexisting rule that the power of revocation includes the power of modification, and thus an available method of revocation is also an available method of modification unless a trust term precludes the use of any method of revocation for modification. (Recommendation Proposing the Trust Law, at p. 568.) Section 15402 was not added, as *King* contends, to establish a different rule from section 15401. (*King, supra*, 204 Cal.App.4th at p. 1193.) Nothing in the Commission's statements proposed treating modification differently from revocation or changing the preexisting rule. In fact, all of the Commission's statements about modification indicate that modification should be governed by the procedures for revocation unless the settlor makes clear an intention to establish a different rule.

*King* contends that if section 15402 merely incorporated the procedures of section 15401 for modifications, then section 15402 would be surplusage. (*King, supra*, 204 Cal.App.4th at p. 1193.) But the Legislature had reason to accept the Commission's recommendation and codify the common law rule that revocation procedures can be used for modification. An appellate court had expressed uncertainty about the legal underpinnings of the rule. (See *Heifetz v. Bank of America* (1957) 147 Cal.App.2d 776, 781 [" 'Does power to revoke include power to amend? It has been held that it does not where the

only power reserved is to revoke the trust in its entirety. Where the terms of the trust are less explicit, the answer is more doubtful. The Restatement [of Trusts] (§ 331[, com.] g) is favorable to the view that the power to amend is included in the power to revoke. The authorities upon the point do not seem to be numerous. As a practical proposition, the principle referred to, if it exists, is too uncertain, too dependent on language furnishing only disputable evidence of intent, to provide a safe working rule.' "].) In the Commission's reports recommending that the Legislature enact section 15402, it cited *Heifetz*, suggesting that the legal uncertainty *Heifetz* identified may have contributed to its decision to recommend formalizing the common law rule. (See, e.g., Recommendation Proposing the Trust Law, *supra*, at pp. 568, fn. 253, 636.)

A later amendment to section 15401 underscores that the Legislature intended revocation procedures to govern modification. In 1988, in response to a proposal by the Commission, the Legislature enacted a change to what is now subdivision (c) of section 15401 relating to attorneys in fact. The relevant statutory provision previously stated that "[a] trust may not be *revoked* by an attorney." (Stats. 1986, ch. 820, § 40, p. 2756, italics added.) The Legislature amended the statute to state that "[a] trust may not be *modified or revoked* by an attorney." (Stats. 1988, ch. 113, § 19, p. 481, italics added.) In proposing this change, the Commission explained that its goal was "to make clear that the rule applicable to revocation by an attorney in fact applies to modification," which "is consistent with the rule provided in section 15402." (Recommendations Relating to Probate Law (Dec. 1987) 19 Cal. Law Revision Com. Rep. (1988) p. 1097.) There is no evidence that the Legislature intended to depart from this goal in enacting the amendment.

It is also relevant that the Commission proposed to make the statutory method more readily available for modification and revocation. The Commission repeatedly indicated that the power of revocation historically has implied the power of modification and that the Commission's intention was to codify that rule. (See, e.g., Recommendation Proposing the Trust Law, *supra*, at pp. 568, 636.) Further, the Commission expressly stated its goal of expanding the availability of the statutory method for revocation. (*Id.*, at p. 568.) These statements suggest that the Commission and, in turn, the Legislature intended to expand the availability of the statutory method not solely for revocation but also for modification, a process that the Commission viewed as implicit in the power of revocation.

In explaining its proposal to expand the availability of the statutory method, the Commission said that under Civil Code former section 2280, "California courts generally . . . held that where the trust instrument prescribes a method of revocation, the prescribed procedure must be followed rather than the statutory method. [Fn. omitted.] This rule [was] defended on the grounds that the settlor may wish to establish a more complicated manner of revocation than that provided by statute where there is a concern about 'future senility or future undue influence while in a weakened condition.' " (Recommendation Proposing the Trust Law, *supra*, at pp. 567–568.) However, the Commission pointed out, this prior "rule may be criticized as defeating the clear intention of the settlor who attempts to revoke a revocable trust by the statutory method, in circumstances that do not involve undue influence or a lack of capacity. In fact, the settlor may have forgotten about the method provided in the trust, or may not be aware of the case-law rule [that prescribing another procedure in the trust

11

instrument would displace the statutory method].” (*Id.*, at p. 568.)

Taking these competing concerns into account, the Commission proposed section 15401, subdivision (a)(2), which was adopted by the Legislature to prioritize the availability of the statutory method while allowing settlors to bind themselves to more onerous procedures if they desire. The Commission explained, “The proposed law adopts a compromise position that makes available the statutory method of revoking by delivery of a written instrument to the trustee during the settlor’s lifetime except where the trust instrument explicitly makes exclusive the method of revocation specified in the trust. This allows a settlor to establish a more protective revocation scheme, but also honors the settlor’s intention where the intent to make the scheme exclusive is not expressed in the trust instrument.” (Recommendation Proposing the Trust Law, *supra*, at p. 568.)

The Court of Appeal in this case said that a trust instrument precludes the use of revocation procedures for modification when it “distinguishes between revocation and modification.” (*Haggerty*, *supra*, 68 Cal.App.5th at p. 1011.) However, the mere fact that a trust instrument distinguishes between modification and revocation by authorizing certain procedures for revocation and other procedures for modification does not suffice to preclude the use of revocation procedures for modification. The legislative history supports the view that the settlor may modify the trust using any procedure for revocation unless the trust instrument says the settlor may not. If a trust were to provide that it “*may only* be modified by an acknowledged instrument in writing,” then the trust would preclude modification via any different method of revocation, including the statutory method, regardless of whether the trust

distinguishes between revocation and modification. But if a trust were to simply provide that it "*may* be modified by an acknowledged instrument in writing," then the trust would not preclude modification via any method of revocation, again regardless of whether the trust treats modification and revocation differently.

In sum, legislative history supports the view that the statutory method is available for modification unless the trust instrument "provides otherwise" by expressly precluding it or by explicitly making a different procedure exclusive.

## C.

Haggerty and amicus curiae argue that policy reasons support making modification more difficult than revocation. According to Haggerty, "[t]he Legislature had reason to make modification presumptively more difficult than revocation. An unscrupulous caretaker or counsel cannot usurp an elder's assets by inducing her to revoke the trust, because intestacy laws would keep the estate within the family. Only if the trustor modified the trust and selected a different beneficiary could the usurper take her assets." But, as respondents note, treating modification more restrictively than revocation is not necessarily more protective of settlors: "The [undue] influencer could induce the settlor to simply revoke the trust and create a new one, which has the same effect as modifying the trust. And even without either revocation or modification, an influencer can induce a settlor to transfer assets out of the trust and into the influencer's control." Further, the influencer may well "be a family member who would inherit if the trust is revoked."

In any event, although there are reasons why the Legislature could have decided to treat modification more

restrictively, the question here is what policy choices the Legislature actually made, not what choices it reasonably could have made. As noted (*ante*, at pp. 11–12), the Commission considered the policy concern that more restrictive procedures for revocation and modification might better protect settlors from undue influence. After weighing the various policy considerations, it proposed a "compromise position" that preferences the availability of the statutory method unless the settlor explicitly binds himself or herself to a different rule. (Recommendation Proposing the Trust Law, *supra*, at p. 568.) We presume that when the Legislature adopted this proposal, it was mindful of existing protections against the dangers raised by Haggerty and amicus curiae, including the tort principles of undue influence and fraud. (See, e.g., *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1039 [" 'The Legislature is presumed to be aware of all laws in existence when it passes or amends a statute.' "].)

Alternative policy arguments regarding whether modifications should be treated more restrictively than revocations are best directed to the Legislature, which may amend the trust laws if it chooses. Our task is to give effect to the statute as we find it. Under the statute, the procedures for revocation can be used for modification unless the trust instrument provides a method of modification and makes it exclusive, or otherwise expressly precludes the use of revocation procedures for modification. We disapprove *King v. Lynch*, *supra*, 204 Cal.App.4th 1186; *Balistreri v. Balistreri, supra*, 75 Cal.App.5th 511; *Diaz v. Zuniga, supra*, 91 Cal.App.5th 916; *Pena v. Dey, supra*, 39 Cal.App.5th 546; *Conservatorship of Irvine, supra*, 40 Cal.App.4th 1334; and *Haggerty v. Thornton*,

*supra*, 68 Cal.App.5th 1003, to the extent that they are inconsistent with this holding.

Finally, Haggerty argues that our decision should apply only prospectively and that *King* should control this case because "it was the prevailing law when Ms. Bertsch devised her trust." But the court below was " 'not bound by an opinion of another District Court of Appeal.' " (*People v. Kim* (2011) 193 Cal.App.4th 836, 847.) Moreover, " 'judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.' " (*Vazquez v. Jan-Pro Franchising Internat., Inc.* (2021) 10 Cal.5th 944, 951, quoting *Rivers v. Roadway Express, Inc.* (1994) 511 U.S. 298, 312–313). This rule generally applies absent narrow exceptions based on fairness and public policy. (*Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 878.) Haggerty does not argue that any of those exceptions apply here, and we see no reason to depart from the usual rule.

## CONCLUSION

We affirm the judgment of the Court of Appeal and remand the case for further proceedings consistent with this opinion.


**LIU, J.**


**We Concur:**

**KRUGER, Acting C. J.**
**CORRIGAN, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**
**POOCHIGIAN, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Haggerty v. Thornton

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 68 Cal.App.5th 1003
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S271483
**Date Filed:**  February 8, 2024

_____

**Court:**  Superior
**County:**  San Diego
**Judge:**  Julia Craig Kelety

_____

**Counsel:**

Blut Law Group, Elliot S. Blut; Keiter Appellate Law and Mitchell Keiter for Plaintiff and Appellant.

Ragghianti Freitas and Paul B. Gruwell for Sal J. Balistreri as Amicus Curiae on behalf of Plaintiff and Appellant.

Artiano Shinoff, Howard A. Kipnis, Steven J. Barnes; Spero Law Office and Leah Spero for Defendant and Respondent Patricia Galligan.

Cross Law and Oleg Cross for Defendant and Respondent Racquel Kolsrud.

Higgs Fletcher & Mack, John Morris, Roland H. Achtel, Scott J. Ingold and Rachel M. Garrard for Defendant and Respondent Union of Concerned Scientists.

No appearance for Defendants and Respondents San Diego Humane Society, Nancy F. Thornton, Jill Bousman, George Bousman, Jack Hebert, Larry Guentherman, Gail Spielman and Dean Spielman.

Hartog, Baer, Zabronsky & Verriere, David W. Baer and Kevin P. O'Brien for Mary A. Nivala Balistreri as Amicus Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mitchell Keiter
Keiter Appellate Law
424 South Beverly Drive
Beverly Hills, CA 90212
(310) 553-8533, ext. 145

Leah Spero
Spero Law Office
255 Kansas Street, Suite 340
San Francisco, CA 94103
(415) 565-9600

Roland H. Achtel
Higgs Fletcher & Mack LLP
401 West A Street, Suite 2600
San Diego, CA 92101
(619) 236-1551